FREDERICK B. MALLORY *vs.* THE MALLORY WHEELER COMPANY.

New Haven and Fairfield Cos., April T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

*A, B* and *C* were the only salaried officers of a manufacturing corporation and a majority of its directors, and the term for which they were employed was about to expire. At a meeting of the directors called at this time, at which all three were present, a vote was passed appointing *A* the agent of the company to make a contract with *B* for the renewal of his contract with the company for five years, another vote to make *A* such agent for making a contract with *C* for the renewal of his contract for five years, and a third vote appointing *C* the agent of the company to make a contract with *A* for the renewal of his contract for five years, and the contracts were at once made. Held that the contracts were voidable by the company.

It made no difference that there were three separate votes. The votes were all related and were the same as if all had been embodied in one vote.

These three directors were thus acting together as a majority of the board to secure to themselves advantageous contracts with the company.

It is a well settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his own personal interest.

The directors of a corporation occupy a position of the highest trust and confidence, and the utmost good faith is required in the exercise of the powers conferred upon them.

It is a general rule that such transactions are only voidable at the election of the corporation, and that if nothing is done in avoidance they stand; much more if they are ratified.

Ratification ordinarily requires some positive assertive act. In order that acquiescence alone should become a ratification the delay must be so

long continued that it can be accounted for only on the theory that there has been some affirmative act.

But before the right to avoid the transaction can be lost by a neglect to act in disaffirmance of it, certain conditions must exist. The delay must have been unreasonable; the stockholders must have been fully advised of all the material facts; and they must have had an opportunity to act, and to act with perfect freedom.

[Argued April 24th—decided June 1st, 1891.]

ACTION to recover a salary claimed to be due the plaintiff as chief manager of the business of the defendant corporation under a contract with the corporation; brought to the Superior Court in New Haven County, and heard, upon the demurrer of the defendant to the plaintiff's reply to the defendant's special defense, before *F. B. Hall*, J. Demurrer sustained and judgment rendered for the defendant, and appeal by the plaintiff. The case is fully stated in the opinion.

*H. Stoddard* and *J. W. Bristol* for the appellant.

*J. W. Alling*, for the appellee.

ANDREWS, C. J. The plaintiff in this case claims to recover the sum of $3,294.44, the balance of salary which he says is due to him for services rendered as chief manager and director of the business of the defendant from the first day of January, 1889, to the first day of January, 1890.

The defendant is a manufacturing corporation organized under a charter from the General Assembly approved March 25th, 1884, and an amendment thereto accepted on the 8th day of April, 1885. The corporation succeeded to the business which, prior to said dates, had been carried on by a partnership of the name of Mallory, Wheeler & Co. That partnership was by its articles of agreement to continue only to the 31st day of December, 1887. The same persons who had been partners in the copartnership became stockholders in the corporation. In connection with the change from the partnership to the corporation a contract was made

between the present plaintiff and the corporation as follows :—

" Whereas it is the desire of all parties in interest that Frederick B. Mallory shall continue to act as chief manager and director of the Mallory, Wheeler & Company corporation in the same manner that he has heretofore acted, and with the same powers that he has heretofore exercised in reference to the business of the copartnership of Mallory, Wheeler & Company:—Now therefore it is mutually agreed between the said Frederick on the one hand and the said corporation, acting herein by its agent William H. Andrews thereto duly authorized on the other part, as follows, to wit :—

" The said Frederick on his part agrees with said corporation that he will act as chief manager and director of the business of said corporation, and will devote his time and services thereto, for the term of three and three quarters years, at a salary and for the compensation of $6,000 per annum.

" And the said corporation on its part hereby agrees with the said Frederick to employ him as chief manager and director of the business of said corporation, with the powers heretofore exercised by him in reference to the management personally of the business of Mallory, Wheeler & Company, for the term of three and three quarter years as aforesaid, at a salary of $6,000 per annum.

" In witness whereof said parties have set their names and seals, and to a duplicate of like tenor and date, this 19th day of April, A. D. 1884.

" THE MALLORY, WHEELER & CO. CORPORATION,<br>
by its agent, William H. Andrews.<br>
" FREDERICK B. MALLORY."

A contract of the same date and tenor was made between the corporation and William H. Andrews, that he should be the assistant treasurer of the corporation for said term of three and three quarters years, at a salary of $3,500 per annum ; and a like contract with Rukard B. Mallory, a brother of the plaintiff, to be the vice-president for the same term,

at a salary of $2,500 per annum. These were the only salaried officers in or about the management of the business of the defendant.

From the organization of the corporation in April, 1884, until May 17th, 1889, the plaintiff was one of its directors, was its president, and was the chief manager of its business, receiving the salary named in the contract. The said Rukard B. Mallory and the said William H. Andrews had also been directors, and had been respectively in the offices and had received the salaries above named. There were five directors in all. The others were John S. Davenport and Franklin B. Dexter.

At a meeting of the directors of the corporation holden on the 29th day of October, 1887, a vote was passed in these words:

" *Voted :* That Wm. H. Andrews be appointed the agent of the company to execute an agreement with Frederick B. Mallory, extending and keeping in force the corporation's contract with him as chief manager and director of the business of the Mallory Wheeler Company for a further term of five years from January 1st, 1888."

It was also voted, " that F. B. Mallory be appointed the agent of this company to execute an agreement with Rukard B. Mallory, extending and keeping in force the corporation's contract with him as vice-president of the Mallory Wheeler Company, for a further term of five years from January 1st, 1888."

It was also voted, ." that F. B. Mallory be appointed the agent of this company to execute an agreement with Wm. H. Andrews, extending and keeping in force the corporation's contract with him as assistant treasurer of the business of the Mallory Wheeler Company, for a further term of five years from January 1st, 1888."

Pursuant to the vote so passed a contract was made with the plaintiff on the 31st day of October, 1887, as follows:—

" In accordance with a vote of the directors of the Mallory Wheeler Company of October 29th, 1887, it is hereby mutually agreed between Frederick B. Mallory on the one

hand and the said company, acting herein by William H. Andrews, its agent thereto duly authorized, on the other, that the corporation's contract with said Frederick B. Mallory as chief manager and director be extended and kept in force for a further term of five years from January 1st, 1888.                    THE MALLORY WHEELER COMPANY,
                     by its agent, William H. Andrews.
                        " FREDERICK B. MALLORY."

A renewal of the contract with the said Rukard B. Mallory and with the said William H. Andrews was made at about the same date, renewing the contract of each for the further term of five years from the first day of January, 1888.

At the annual meeting of the corporation holden in May, 1889, the stockholders elected a new board of directors. It is alleged, and admitted by a demurrer, that the new board of directors was chosen by a majority of the stockholders with the intent and design to disregard said contracts of renewal.   And on the 14th day of May, 1889, the new board of directors passed the following vote :—" *Resolved*, that in the opinion of this board the so-called renewal of October 29th, 1887, of the contract made with F. B. Mallory by William H. Andrews as agent of this company, is void and of no binding value, and that the said F. B. Mallory no longer be permitted to act as manager or exercise any other rights than appertain to any stockholder ; and the secretary is hereby instructed to send him forthwith a copy of this resolution."

Since the passing of this resolution the plaintiff has not performed any of the duties of said office of chief manager, though, as he avers, he has at all times been willing and has offered so to do.   It is the salary from the said 17th day of May to the end of the year which he claims in this suit.

These are the controlling facts as set forth in the record. The questions presented are—whether or not the contract of renewal made with the plaintiff on the 31st day of October, 1887, was void ; and, if not void, was it voidable at

the option of the corporation ? The first one is not very important in this case because, if it was voidable only, it has been avoided in an unequivocal manner by the action of the board of new directors, acting by the direction of the stockholders.

The contract of renewal must of course be considered in connection with the vote of the directors appointing an agent to make the renewal. The contract depends on that vote. The vote appointing the agent to make the contract and the making of the contract are the successive steps in one transaction. The latter cannot be valid if the former is invalid. That vote consists of three parts, and while in the present inquiry only the part which appointed Mr. Andrews to be the agent of the corporation to make the renewal with the plaintiff is directly involved, it is impossible to consider that part by itself. The vote as it is set forth in the record purports to be one vote, and not three separate votes. It seems to have been passed as a whole and as a single expression of the will. But whether this action of the directors be regarded as one vote or as three separate votes can make no real difference. If there were three votes, they were all passed at the same meeting. They were related to each other, and all had reference to one common object, the continuing the same persons in the management of the business of the corporation who were then managing it. So that the three separate votes, or the three parts of one vote, must all be taken together in order to ascertain what influences operated to procure the passage of any one of them, and to determine their effect when passed.

It is not necessary to suppose that there was any formal agreement beforehand between the three directors interested that these three votes should all be passed. It is altogether likely that there was no such agreement. But the votes were all before the directors' meeting at the same time. These three directors were all present. They were each interested in the common object to be attained by their passage. No one of these votes could be passed without the affirmative voice of one of these directors. The three

votes were all passed ; and as to each of these directors the vote was speedily followed by a contract of renewal. In the result, the affirmative action of any one of them became the affirmative action of them all.

The case then, in its full outline, is one where a majority of the directors, each being a salaried officer of the corporation, and together being all its salaried officers, appointed one of themselves to be the agent of the corporation to make a contract with one or more of the others, and then one of the latter to be the agent of the corporation to make a contract with the one named as the agent in the first instance, continuing in force agreements by which they were to remain in the control of all the business of the corporation and in receipt of all the salaries paid by the corporation. It amounted to a stipulation on the part of the defendant that in no contingency should there be any change of the management of the corporation or a reduction of its expenses for the term covered by the renewal contract.

Such contracts have been repeatedly declared void as being opposed to public policy. *Wardell* v. *Union Pacific R. R. Co.*, 103 U. S. R., 651 ; *Woodstock Iron Co.* v. *Richmond etc. Extension Co.*, 129 id., 643 ; *West* v. *Camden*, 135 id., 507 ; *Guernsey* v. *Cook*, 120 Mass., 501 ; *Noel* v. *Drake*, 28 Kansas, 265.

We fully recognize the authority of these decisions. But the question of public policy is not necessarily involved in the present case. In a narrower view this case is one also in which the plaintiff has made use of his position as a director in the defendant corporation to secure for himself an advantageous contract for a salary. So the question becomes—is such a contract void ? and if not, is it voidable ? This question must be answered according to the equitable doctrine which governs and controls the conduct of a trustee or other fiduciary towards his *cestui que trust* or beneficiary.

It is a thoroughly well-settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make

use of that relation to benefit his own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. Where the possibility of such a conflict exists there is the danger intended to be guarded against by the absoluteness of the rule. The underlying thought is that an agent or other fiduciary should not unite his personal and his representative characters in the same transaction; and equity will not permit him to be exposed to the temptation, or be brought into a situation where his own personal interests conflict with the interests of his principal and with the duties he owes to his principal. The rule applies alike to agents, partners, guardians, executors and administrators, and directors and managing officers of corporations, as well as to technical trustees. It is a violation of his duty for any trustee or director acting in his fiduciary capacity to enter into any contract with himself connected with the trust or its management. Such a contract is voidable and may be set aside at the suit of the beneficiary. This rule has been recognized and enforced in a very great number of cases, which are brought together in the notes in 2 Pomeroy's Equity, under sections 958, 959, 1050, and 1077, and in Story's Equity Jurisprudence, §§ 522, 1211. See also *Banks* v. *Judah*, 8 Conn., 145; *Caldwell* v. *Sigourney*, 19 id., 37; *Candee* v. *Skinner*, 40 id., 464; *Clement's Appeal from Probate*, 49 id., 520; *Potter's Appeal from Probate*, 56 id., 1; *Disbrow* v. *Secor*, 58 id., 35; *Michoud* v. *Girod*, 4 Howard, U. S., 503; *Gardner* v. *Ogden*, 22 N. York, 327.

The relation between the directors of a corporation and the company itself is in most respects a fiduciary relation. While not trustees in a technical sense they are often called such in practice. They are agents invested with wide discretionary powers in the management of the company's business. And whenever an agent is invested with authority to use any discretion in the exercise of the powers con-

ferred upon him, it is an implied condition that this discretion shall be used in good faith for the benefit of the principal, according to the true purpose of the agent's appointment. To this extent every agency which is not a purely ministerial one, involves a fiduciary relation between the parties. It is manifest therefore that the directors of a corporation occupy a position of the highest trust and confidence, and that the utmost good faith is required in the exercise of the powers conferred upon them. They have no right under any circumstances to use their official positions for their own benefit or the benefit of any one except the corporation itself. It is for this reason that the directors have no authority to represent the corporation in any transaction in which they are personally interested in obtaining an advantage at the expense of the company. Morawetz on Corporations, §§ 516, 517 ; Angell & Ames on Corporations, § 233, and note.

"The directors are a body to whom is delegated the duty of managing the general affairs of the company. A corporate body can only act by agents, and it is of course the duty of those agents so to act as best to promote the interests of the corporation whose affairs they are conducting. Such agents have duties to discharge of a fiduciary nature towards their principal, and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have a personal interest conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strictly is this principle adhered to that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. * * * It is true that the questions have generally arisen on agreements for purchases or leases of lands and not as here on a contract of a mercantile character. But this can make no difference in principle. The inability to contract depends not on the subject-matter of the agreement, but on the fiduciary character of the contracting party, and I cannot entertain a doubt of its being applicable to the case of a party who is acting as manager

of a mercantile or trading business for the benefit of others, no less than to that of an agent or trustee employed in selling or letting land." *Aberdeen Railway Co.* v. *Blaikie*, 1 McQueen, Scotch Appeals, 462, by Lord CRANSWORTH, Chancellor. In *In re Coalbrook Railway Co.*, 18 Beavan, 339, Sir JOHN ROMILLY, the Master of the Rolls, said :—" The directors of a public company are trustees for the stockholders, and their private interests must yield to their public duty whenever they are conflicting. The court would hold that as long as he filled the office of trustee and director he could not enter into or sanction any transaction by means of which he gained a personal advantage to himself." And again, in *Great Luxemburg Railway Co.* v. *Sir William Magnay*, 25 Beavan, 589, he said :—" The directors of a company are trustees, and they have attached to them for the benefit of the shareholders all the liability and duties which attach to a trustee and agent. If therefore a director enter into a contract for the company he can derive no personal benefit from it." *Flanagan* v. *Great Western Railway Co.*, L. R., 7 Eq. Cases, 116. Other English authorities may be found collated in the notes to the case of *Fox* v. *Mackreth*, 1 White & Tudor's Leading Cases in Equity, (2 Am. ed.,) 148.

The courts in this country, equally with the courts of England, have been clear and emphatic in declaring this rule to be applicable to the directors of a corporation. In *Cumberland Coal Co.* v. *Sherman*, 30 Barbour, 553, the court, after citing the case of *Aberdeen Railway Co.* v. *Blakie*, *supra*, says :—" Nay, the rule as applicable to managers of corporations should in no particular be relaxed. Those who assume the position of directors and trustees assume also the obligations which the law imposes on such a relation. The stockholders confide to their integrity, to their faithfulness, and to their watchfulness, the protection of their interests. This duty they have assumed, this the law imposes on them, and this those for whom they act have a right to expect. The principals are not present to watch over their own interests ; they cannot speak in their own behalf ; they must trust to the fidelity of their agents. If they discharge

these important duties and trusts faithfully, the law interposes its shield and defense ; if they depart from the line of their duty, and waste or take themselves, instead of protecting, the property and interests confided to them, the law on the application of those wronged or despoiled promptly steps in to apply the correction and restores to the injured what has been lost by the unfaithfulness of the agent."

In *Dunscomb* v. *N. York, Hous. & Northern R. R. Co.*, 84 N. York, 190, 198, the Court of Appeals said :—" It is not intended to deny or question the rule, that whether a director of a corporation is to be called a trustee or not, in a strict sense, there can be no doubt that his character is fiduciary, being intrusted by others with powers which are to be exercised for the common and general interests of the corporation, and not for his own private interests, and that he falls therefore within the doctrine by which equity requires that confidence shall not be abused by the party in whom it is reposed, and which it enforces by imposing a disability, either partial or complete, upon the party intrusted, to deal on his own behalf in respect to any matter involving such confidence. Nor is it at all questioned that in such cases the right of the beneficiary or those claiming through him to avoidance does not depend upon the question whether the trustee in fact has acted fraudulently or in good faith and honestly, but is founded upon the known weakness of human nature and the peril of permitting any sort of collision between the personal interests of the individual and his duties as trustee in his fiduciary character." See also *Barnes* v. *Brown*, 80 N. York, 535 ; *Blake* v. *Buffalo Creek R. R. Co.*, 56 id., 485 ; *Hoyle* v. *Plattsburgh & Montreal R. R. Co.*, 54 id., 314 ; *Barr* v. *N. York, Lake Erie & Western R. R. Co.*, 125 id., 263 ; *European & North Am. R. R. Co.* v. *Poor*, 59 Maine, 277 ; *Flint etc. R. R. Co.* v. *Dewey*, 14 Mich., 477 ; *Hoffman Steam Coal Co.* v. *Cumberland Coal Co.*, 16 Md., 456 ; *Simons* v. *Vulcan Oil Co.*, 61 Penn. St., 202 ; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. R., 587.

It may be fairly gathered from the authorities cited that the rule we are now considering does not operate *ipso vire*

to avoid every transaction of a trustee made with his beneficiary in which he is interested. It is generally limited in its operation to rendering them voidable at the election of the party whose interests are concerned in the question of their affirmance or disaffirmance. If therefore nothing is done in avoidance the transaction remains. 2 Pomeroy's Equity, § 1077 ; *Dunscomb* v. *N. York, Hous. & Northern R. R. Co.*, 84 N. York, 190, 198. Much more if the transaction has been ratified by that party. *Barr* v. *N. York, Lake Erie & Western R. R. Co.*, 125 N. York, 275.

The plaintiff contends that the contract upon which the action is brought had been ratified by the defendant, and that the pretended vote of avoidance was itself void. Such ratification is claimed to be established by the conduct of the defendant. The averment is that "at a meeting of the defendant, held in May, 1888, at which all the stock was represented, all the stockholders being fully advised that the contract in question was made and of its terms, no action was taken, at that time nor at any subsequent stockholders' meeting, to disannul said contract or tending to repudiate the same, and the said contract was thereby acquiesced in by said stockholders' meeting."

The contract of renewal was made on the 31st day of October, 1887. This stockholders' meeting was held in May, 1888. There is nothing to indicate, or even to suggest, that the stockholders had any knowledge of that contract until the day of that meeting. No other meeting of the stockholders is shown to have been had until the annual meeting in May, 1889, when the new board of directors was chosen, who promptly repudiated it. Instead of delay it would seem that the stockholders acted in disaffirmance of the contract on the very first opportunity when it was possible for them to act. No affirmative act of ratification on the part of the defendant is alleged to have been done.

Ratification ordinarily requires some positive assertive act. *Howell* v. *McCrie*, 36 Kansas, 636. In order that acquiescence alone should become ratification the delay must be so long continued that it can be accounted for only on

the theory that there has been some affirmative act. *Town of Derby* v. *Alling*, 40 Conn., 410 ; *Evans* v. *Smallcombe*, L. R., 3 Eng. & Irish Appeals, 249. The distinction is, perhaps, of no consequence in this case. The real claim is that the defendant by long delay has lost all right to avail itself of the original invalidity in the plaintiff's contract. Whether it is called ratification, or waiver, or acquiescence, or estoppel, makes no very great difference. But before such right can be lost in either of the ways mentioned certain conditions must exist. The delay must have been unreasonable. Lewin on Trusts, (Am. ed.,) side pages 495, 496 ; *Sherman* v. *Fitch*, 98 Mass., 64 ; *Indianapolis Rolling Mill* v. *St. Louis, Fort Scott & Wichita R. R. Co.*, 120 U. S. R., 256. The stockholders must have had an opportunity to act, and to act with perfect freedom. *Hoffman Steam Coal Co.* v. *Cumberland Coal Co.*, 16 Md., 456 ; *Hoxie* v. *Home Ins. Co.*, 32 Conn., 21, 40 ; *Allore* v. *Jewell*, 94 U. S. R., 512 ; *DeBussche* v. *Alt*, 8 Ch. Div., 286 ; *Kempson* v. *Ashbee*, 10 Cha. Appeals, 15 ; *Sayers* v. *Collyer*, 28 Cha. Div., 103. And have been fully advised of all the material facts in the case. *Gould* v. *Blodgett*, 61 N. Hamp., 115 ; *Kelley* v. *Newburyport etc. Horse R. R. Co.*, 141 Mass., 496 ; *Phosphate of Lime Co.* v. *Green*, L. R., 7 C. P., 43 ; Lewin on Trusts, (Am. ed.,) side page 597 ; *The Imperial Mercantile Credit Association* v. *Coleman*, L. R., 6 Cha. Appeals, 558 ; *Albion Steel & Wire Co.* v. *Martin*, 1 Cha. Div., 580 ; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. R., 587. The allegations of the plaintiff's pleading in this behalf fall far short of showing these conditions to exist in this case.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.