DANA BARTHOLOMEW ET AL. *vs*. THE DERBY RUBBER
COMPANY ET AL.

Third Judicial District, New Haven, June Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A manufacturing corporation organized under the joint stock laws of Connecticut and located in this State, being unable to raise the capital necessary to continue its business with profit, leased its plant for a term of ten years with a privilege of purchase. In a suit by minority stockholders to have the lease adjudged void and set aside, it appeared that it was made in good faith by the directors, was approved by a large ma-

jority of all the stockholders, and contemplated the continuance of the same business under the lessee's management.  *Held* that the lease was not *ultra vires*.

It is competent for any business corporation, and especially one financially embarrassed, to sell its property, pay its debts, divide its assets and wind up its affairs.

Fraud is never inferred unless charged; and then only where the facts and circumstances indicate clearly that fraud has been committed.

[Argued June 9th—decided July 13th, 1897.]

SUIT by certain minority stockholders of a joint stock manufacturing company, to compel the surrender and cancellation of a lease of its plant, brought to the Superior Court in New Haven County and reserved by that court, *Robinson, J.*, upon demurrer of the respondents, for the consideration and advice of this court.  *Judgment sustaining demurrer advised.*

From the allegations of the complaint it appeared that the Derby Rubber Company was a joint stock corporation organized in 1889 under the laws of this State and located in the town of Huntington; that the purpose for which it was formed was to reclaim and work over old rubber and to manufacture and sell rubber goods of all kinds, and that it was the owner of a valuable plant convenient and suitable for carrying on this business.   The complaint also averred that the company had carried on its business with profit until June, 1891, when it leased its plant to a New York corporation, which occupied the factory and carried on the business up to May, 1895 ; that about the first of that month the lease was canceled by mutual consent, and the defendant corporation was thereupon restored to all of its property, real and personal, which had theretofore been leased to and held by said New York corporation; that on May 9th, 1895, the directors of the defendant corporation voted to lease the entire plant to one Loewenthal of New York City, and on the following day caused a notice to be issued by the secretary of a special stockholders' meeting to be held on May 15th, 1895, for the purpose of confirming the aforesaid action of the directors; that such meeting was held pursuant to the notice, and the action of the directors was ratified and approved by a majority of the entire stock

(2,000 shares or \$50,000) and by all the stockholders present at the meeting. The term of the lease thus confirmed was for one year, with a privilege upon the part of the lessee to renew the lease from year to year, for a period not exceeding nine years, upon the same rent, terms and conditions. The lease also provided that at the expiration of any year the lessee might purchase the property if he chose, at a price to be determined upon by an appraisal made in conformity to the mode therein designated. The complaint further averred that at the time this lease was made, the Derby Rubber Company could not have carried on its business successfully and with profit, without additional capital; that all the directors and stockholders who voted in favor of the lease were unwilling to embark further capital in the business, and no other person offering to furnish it, the course pursued was, in the judgment of those who favored it, the most profitable for the company and its stockholders. Paragraphs 17, 18 and 19 of the complaint were as follows:—
" 17. The said Derby Rubber Company and the said directors and stockholders thereof intended, by the action taken by them, to abandon the business for which said company was created, for and during the time mentioned in said lease, and to place its factory, tools, and machinery out of its possession and control, so that during the term of said lease the business for which said corporation was organized could not be carried on by said corporation in the premises described in said lease. 18. Neither the stockholders nor directors who voted to make said lease and agreement, expected thereby to wind up the affairs of said company, so long as the property described in said lease should be in the possession of the said Lowenthal, nor did they expect to distribute among the stockholders of said company any of its assets described in said lease and contract, except the rent that would be payable under the terms of said lease. 19. The stockholders and directors who voted in favor of said lease and agreement did expect that if the said Lowenthal purchased said property under said agreement, that thereupon said corporation should be dissolved, and that all of the prop-

erty described in said lease should thereupon be sold and conveyed to the said Loewenthal at the price which should be fixed and determined upon, pursuant to the conditions named in said lease and agreement."

The plaintiffs claimed: 1. An order citing in such shareholders of said Derby Rubber Company as omit to join with the plaintiffs and the defendants therein, and that the lease and agreement (to Loewenthal) be declared null and void. 2. That said Loewenthal be required to surrender said lease and the possession of the property now held by him and owned by the said Derby Rubber Company.  3. Such other or further orders in the premises as may be necessary to fully protect the rights of the plaintiff, and to carry into effect such orders as the court may see fit to pass in the premises.

The defendants Loewenthal et al. demurred to the complaint, assigning fourteen reasons; but mainly relied on the ground that the lease and contract, upon the facts alleged in the complaint, was within the powers of the Derby Rubber Company, and was duly authorized, executed and delivered in its name and behalf by a majority of its stockholders and by its directors, acting in good faith and for the best interests of the company.

By agreement of the parties the questions of law arising upon the demurrer were reserved for the consideration and advice of this court.

*Edwin B. Gager* and *William S. Downs*, for the respondents Loewenthal et al.

It is within the power of an ordinary joint stock corporation to lease or sell its entire plant.  *Treadwell* v. *Salisbury,* 7 Gray, 404; Beach, Pri. Corp. §§ 357, 358; Thomp., Corp. §§ 4443, 6541; *Miner's Ditch Co.* v. *Zellerbach,* 37 Cal. 543; *Ardesco Oil Co.* v. *N. A. Mining Co.,* 66 Pa. St. 382.  If it is true that the Derby Rubber Company had power to sell or lease its entire manufacturing plant for any purpose whatsoever, then the following proposition applies, to wit: If an act is, in any case, within the corporate power, third parties, without notice in fact of any unlawful purpose, have the

right to presume adequate authority for the act and a lawful purpose. 27 Amer. & Eng. Ency. of Law, 387, 388 and notes; Thomp., Corp. §§ 5644, 5967, 5975, 5978; Beach, Pri. Corp. §§ 427, 429; *Hitchcock* v. *Galveston*, 96 U. S. 351;[1] *Leslie* v. *Lorillard*, 110 N. Y. 519; *Miller* v. *Amer. Mut. Accident Ins. Co.*, 20 L. R. A. 765; *Salt Lake City* v. *Hollister*, 118 U. S. 260; *Bissell* v. *Mich. So. & No. Ind. R. R.*, 22 N. Y. 289; *Monument Nat. Bank* v. *Globe Works*, 101 Mass. 58. While it is true that in some cases and for some purposes a manufacturing corporation cannot dispose of its entire property and abandon its business without the consent of all its stockholders, yet we do not understand the rule to be that under no case can such a sale or lease be made or the business discontinued. In every case the statement must be interpreted in view of the special facts before the court. *Skinner* v. *Smith*, 134 N. Y. 240; *Hancock* v. *Holbrook*, 9 Fed. Rep. 453; *Boston, etc., R. R.* v. *New York, etc.*, 13 R. I. 26; Morawetz, Corp. §§ 413, 1004; *Beaufort* v. *Keokuk Packet Co.*, 69 Mo. 611. The plaintiffs having failed to attend the stockholders' meeting are estopped from objecting to the action taken. Morawetz, Corp. § 630; *Allen* v. *Wilson*, 28 Fed. Rep. 677; *Mowrey* v. *R. R. Co.*, 4 Biss. (U. S.) 78; *Gregory* v. *Patchett*, 33 Beav. 602; *Hotel Co.* v. *Wade*, 97 U. S. 25; *Terry* v. *Eagle Lock Co.*, 47 Conn. 161; Thomp., Corp. § 4497. The company having for a series of years conducted its business by leasing rather than by manufacturing on its own account, without any opposition on the part of any stockholder, the directors, the majority of the stockholders and third parties had the right to presume that the remaining stockholders consented to and acquiesced in such conduct of the business; at least until such minority stockholders object and ask that the company engage in manufacturing on its own account rather than by way of leasing. The claim of *ultra vires* is always regarded as odious and only to be enforced in very clear cases, and will never be applied where it is not clearly demanded by every principle of equity. *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Portland L. & Mfg. Co.* v. *Portland*, 6 L. R. A. 290; *Bissell* v.

*Michigan So. Ry.*, 22 N. Y. 289; *Kennedy* v. *California Savings Bank*, 101 Cal. 495; *Carson City Savings Bank* v. *Carson City Elevator Co.*, 90 Mich. 550. In the case before the court there is no allegation of any intent either to engage in or invest in any other business. On the other hand the allegations of intent are conclusive as to the lawfulness of the purpose of the corporation in making the contract and lease. *Occum Co.* v. *Sprague Mfg. Co.*, 34 Conn. 541.

*V. Munger*, for the petitioners.

The only instance in which a sale of the entire business and plant of a corporation can be sustained, is where the corporation intends to abandon its business and divide its assets among its stockholders. Corporations cannot lease or sell their plant and tie up the assets for an indefinite period. *Byrne* v. *Schuyler Electric Mfg. Co.*, 65 Conn. 336; *Kean* v. *Johnson*, 9 N. J. Eq. 402; *Abbott* v. *American Hard Rubber Co.*, 33 Barb. 578; Cook, Stock & Stockholders, § 667; 3 Thomp., Corp. § 3983; *Miner's Ditch Co.* v. *Zellerbach*, 37 Cal. 543. When the first lease was canceled the corporation had no right to make another illegal contract, especially as against Bartholomew. The law gives to all parties the opportunity to remedy a wrong, to withdraw from an illegal position. *Shepaug Voting Trust Cases*, 60 Conn. 575; *New Castle, etc., R. R.* v. *Simpson*, 21 Fed. Rep. 537. The lease was fraudulent on its face, and should not be sustained as against these plaintiffs. *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 132; *Gamble* v. *Queens County Water Co.*, 123 N. Y. 98. Here were five directors; Royal M. and Theodore S. Bassett were two. They held the majority of stock; they controlled the stockholders' meeting and procured the vote by which the lease was ratified. Soon after that vote was passed we find these two men in possession of this property as copartners with Lowenthal. Not only is there no evidence of good faith, but every circumstance tends to show that good faith was wholly wanting. There is another reason why this contract ought not to be sustained. It is unfair, one-sided, partial and inequitable. It binds the Derby Rubber Co. for ten years, and yet the

parties in possession are bound for only one year. The notice of the stockholders' meeting was insufficient. The object was confined to "confirming the lease." This gave no notice of a sale of the entire plant. *Broomfield* v. *Charter Oak Bank*, 121 U. S. 121; *Hunt* v. *School District*, 14 Vt. 300; Cook, Stock & Stockholders, § 595; 1 Thomp., Corp., §§ 717, 718, 710, 712, 715. The defendants sent out a call which was misleading, illegal, and withheld from the stockholders vital information. *People* v. *Albany R. R.*, 55 Barb. 344: *Mc-Dougall* v. *Gardiner*, L. R. 1 Ch. Div. 19. The plaintiffs are not estopped. It does not appear that they had actual notice of the special meeting. For certain purposes the law will presume that it was received, but not for any such purpose as this. Estoppels are odious and will not be applied except to promote the ends of justice. *Byrne* v. *Schuyler Elec. Mfg. Co.*, 65 Conn. 336; Cook, Stock & Stockholders, § 729; *American Bank* v. *Baker*, 4 Metc. 164. The plaintiffs cannot be estopped until they know their legal rights. That can be ascertained only after consulting counsel. They were justified, therefore, in waiting until the 9th of August before bringing suit.

ANDREWS, C. J. The plaintiffs are a minority of the stockholders of the Derby Rubber Company. They ask that a certain contract called a lease, between the said company and the other defendants, be set aside and declared to be void. The record shows that this contract was made by the directors of the company; that it was, before delivery, submitted to a meeting of the stockholders duly called for that purpose, and that by a unanimous vote of the stockholders present at that meeting and holding a majority of all the stock, it was affirmed and ratified. The plaintiffs, although duly notified of said meeting and the purposes for which it was to be held, voluntarily remained away.

If the contract was really *ultra vires* of the corporation, the plaintiffs may claim that it should be set aside. The contract contains an option to the lessee to become the purchaser of the property at a price to be fixed by a sort of

arbitration. The complaint avers that it is the intention of the directors and the majority stockholders, in case the option is used, to divide the money received among all the stockholders and wind up the affairs of the corporation. As a conditional contract to sell the property, this agreement is not questioned; nor could it well be questioned. It is competent for any business corporation to sell its property, pay its debts, divide its assets and wind up its affairs. Especially is this so if the corporation is in an embarassed condition. It is as a lease for ten years without a sale, that the contract is said to be *ultra vires.* We speak of the contract hereafter as a lease. The sole question then is: Was the vote ratifying the lease, and so the lease itself, *ultra vires* and void?

We are inclined to think the lease was not void. The lessee is to continue the same business which the corporation was organized to carry on. The lease, therefore, is not a change in the business, but only a change in the management of the business. The financial condition of the corporation is now depressed, and its business cannot be made profitable under its own management, for want of capital. Additional capital is not available. But neither the directors nor the majority stockholders have so far lost confidence in the concern as to be willing peremptorily to wind up its affairs. The lease was entered into as the best, perhaps the only, means of carrying the corporation over this period of depression, and in the meantime obtaining some income for the stockholders. If a sale takes place it is certain that the property will be worth more in operation than if left idle. Such leases have repeatedly been sustained by the courts of equity.

The case of *Featherstonhaugh* v. *Lee Moor Porcelain Clay Co.,* L. R. 1 Eq. 318, 326, was like the one in hand, in this: Minority stockholders asked to have a lease of the entire property of the corporation set aside. That company was incorporated for "the working, preparation, and sale of porcelain clay," with power to combine "mining operations" with the original business. After a period of unsuccessful

working, a majority of the stockholders voted to and did lease the whole of the works and buildings of the company for the period of twenty-one years. It was held that this was a valid lease, not beyond the power of the company to make. The Vice-Chancellor, SIR WILLIAM PAGE WOOD, in giving the opinion, said: "It appears to me that I should be controlling improperly the effect of this deed, if I did not allow this company to do that act which through the medium of their directors they have done. . . . Have the company by this act which they intend to carry into effect . . . either on the one hand abandoned their purposes, . . . or on the other hand, exceeded their purposes? Have they done either one or the other? It appears to me they have not abandoned the purposes of the company. They have granted a lease for twenty-one years, and, so far, they have agreed to take a rent for their property instead of working it themselves, and taking the profit. At the end of twenty-one years they are to have the whole of the property back, and, as it appeared to them (that is the true way to put it, for they are the sole judges on that part of the case), they would have it back in a more profitable condition. . . . They have not exceeded their powers, because nobody can contend that parting with their property for a certain time is exceeding their powers, beyond this, that during all that time they are not carrying on the business. But, as to that view, I apprehend that it is perfectly competent for a meeting (*i. e.*, of the stockholders) to say: 'China clay is in a very depressed state—the market is very bad— and we agree it is better not to work it for two or three years.' That would be entirely within their functions, and they would not be said, in that respect, to have abandoned their work, or to have exceeded the functions allowed them." The bill was dismissed with costs.

In *Simpson* v. *Westminster Palace Hotel Co.*, 8 H. L. Cas. 712, 718, a company was established "for the erection, finishing, and maintenance of a hotel, . . . and the doing all such things as are incidental or otherwise conducive to the attainment of" that object. The directors of the company let, for a stipulated period of five years, to the head of a gov-

ernment department for the business of his office, a large part of the hotel. There was evidence that this use would be advantageous to the company in its intended business. This, too, was a bill by minority stockholders asking that the lease might be declared invalid. It was held that the arrangement was valid. In the House of Lords, the Lord Chancellor (LORD CAMPBELL), said : " From the large rent immediately to be received by the company for the occupation of the one hundred and sixty-nine rooms by the India Board; from the monopoly to be enjoyed by the company in supplying so many persons with refreshments; and from the fashionable reputation to be conferred on the hotel by this association, the opinion expressed by the majority of the stockholders, that the arrangement is beneficial to them, is likely to be verified. This anticipation would not be sufficient if the original undertaking had been abandoned, or if there was any extension of the original undertaking; but as there is neither abandonment nor extension of the original undertaking, and the arrangement may assist instead of obstructing the prosecution of the original undertaking, I must advise your Lordships to affirm the decree appealed against."

In _Temple Grove Seminary_ v. _Cramer_, 98 N. Y. 121, a company incorporated as an academy, or seminary of learning, was held not to have exceeded its powers by leasing one of its buildings during the vacations for a boarding-house. See also _Lafond_ v. _Deems_, 81 N. Y. 507. In _Brown_ v. _Winnisimmet Co._, 11 Allen, 326, a company chartered as a ferry company let one of its vessels not needed in its ferry business to be used in another business. This was held not to be an _ultra vires_ contract. See also _City Hotel_ v. _Dickinson_, 6 Gray, 586; _French_ v. _Quincy_, 3 Allen, 9; _Lyndeborough Glass Co._ v. _Mass. Glass Co._, 111 Mass. 315; _Calloway Mining, etc., Co._, v. _Clark_, 32 Mo. 305; _Watts's Appeal_, 78 Pa. St. 370; _Dupee_ v. _Boston Water Power Co._, 114 Mass. 37.

We have considered this case on the assumption that the action of the directors and the majority stockholders was done in good faith and in the honest belief that they served the best interests of all concerned. If fraud had been charged

a very different case would have been presented. Counsel for the plaintiffs says in his brief that the lease was fraudulent on its face. But fraud is not charged in the complaint. Fraud is never to be presumed. While fraud may in some cases be inferred from the facts, it is never to be inferred unless it is charged; and then only where the facts and circumstances indicate clearly that fraud has been committed.

The Superior Court is advised that the complaint is insufficient, and to sustain the demurrer.

In this opinion the other judges concurred.