ABRAHAM KLOPOT v. DANIEL W. NORTHRUP ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued February 4—decided May 5, 1944.

*Curtiss K. Thompson,* for the appellant (plaintiff).

*Frank E. Callahan,* for the appellees (defendants).

MALTBIE, C. J.   This is an action brought by the plaintiff, a minority stockholder in the defendant corporation, to which we shall refer as the Newman Company, against the corporation and its directors other than himself to secure an injunction against a transfer of some of its assets to another corporation, to which we shall refer as the Miles Company, or in the alternative a judgment that the plaintiff is entitled to be paid the value of the stock he owns in the Newman Company.   From a judgment for the defendants, the plaintiff has appealed.

There is little dispute as to the underlying facts, and with some minor corrections the finding presents this situation: Both corporations are organized under the laws of the state of Connecticut. The business of the Newman Company is the manufacture and sale of corsets. It has been a financially sound concern and its operations have been successful. As of November 30, 1942, it had gross assets of about $900,000 and an operating profit for the year then ending of $365,000. In the spring of 1941 it began the development of a new type of surgical corset known as the Dora Miles garment. This garment is not adapted for general use, but is intended for women who, because of physical disability or illness, cannot wear an ordinary corset. Its manufacture and sale will not compete with that of the corset regularly made by the Newman Company. Its manufacture involves the use of patents owned by the Newman Company and rights under patent applications covering inventions by Joseph J. Kispert to the use of which the Newman Company is entitled. In October, 1942, the Newman Company leased premises for the manufacture of the Miles garment and to a limited extent embarked upon that undertaking. Prior to March 1, 1943, the expenditures of the Newman Company on this project were represented by tangible assets to the value of about $22,000, and expenses amounting to some $49,000; and it had a gross estimated profit upon sales of the Miles garment up to that time amounting to a little over $7000. The directors of the Newman Company other than the plaintiff believed that the garment could not be marketed successfully by the company because it is a surgical garment which cannot be sold over the counter but must be custom-fitted, and because it would have to be sold by persons with special training and partly, at least, through different channels of distribution

and by different methods than the company used for its regular lines of corsets; and they concluded that a separate corporation should be organized to manufacture and sell the Miles garment to which should be transferred the business, property and good will connected with its manufacture and sale, with the right to manufacture under the patents and patent applications to which reference has been made.

At various meetings of the directors a plan to accomplish this purpose was discussed and in general approved. The purpose the directors had in mind was so to organize the new corporation that the Newman Company and its stockholders should have the benefit of the manufacture and sale of the Miles garment if the project proved successful. As originally planned, 9000 of the 10,000 shares of the common stock of the new corporation, which was to have no par value, were to be offered to the stockholders of the Newman Company at $1 a share; this proposal was later changed to one whereby the Newman Company would itself take the stock; but, because of a fear that its ownership of that stock might seriously interfere with the price schedule for the garments it was manufacturing which had been approved by the federal office of price administration, it was finally decided that the company would purchase, at 12 cents a share, 9349 shares of the common stock of the new company—the number of shares of its own common stock outstanding—and that this stock should be immediately distributed to stockholders as a dividend. Other details of the plan were that the new company would issue preferred stock with no par value which would be entitled to dividends of $5 a share cumulative after 1943, and would be redeemable by the company at $100 a share; that such a number of shares of this stock would be delivered to the Newman Company as would, at $90

a share, equal the value of the assets transferred to the new company less the profits on garments sold by the Newman Company; that, in return for the patent rights, the new company would pay to the Newman Company a royalty upon the Miles garments sold; and that the Newman Company would make further advances to the new company in return for shares of preferred stock, or notes. Throughout these proceedings the plaintiff opposed the plan of turning over to another corporation the manufacture and sale of the Miles garment.

The plan was finally submitted to a special meeting of the stockholders, and a resolution was adopted approving it and requesting the directors to proceed with it "according to their business judgment, including the making of changes in the plan and terms thereof as the directors in their judgment think appropriate." Seventy-eight per cent of the outstanding common stock and 54.3 per cent of the outstanding preferred stock were voted in favor of this resolution, and the only stock voted against it was that of the plaintiff, amounting to 407 shares of the preferred and 1200 shares of the common stock. The defendant directors propose to proceed with the plan as outlined above. In addition to the provisions already referred to, the proposal was that the further advances to the new company by the Newman Company might amount to as much as $35,000, for which it would receive preferred stock or notes; and the royalty payments for the use of the patents were to be at the rate of $1 a dozen on garments sold, not, however, to begin until 8000 dozen have been sold, in order to permit the new company to accumulate capital to a greater extent. The assets which would be transferred to the new company in return for preferred stock have a book value of about $22,000, and profits from the sale of the Miles

garment to February 28, 1943, were estimated to be $7,021.68.

On January 9, 1943, the new company, the Miles Company, was incorporated and it was authorized to issue common and preferred stock in accordance with the plan above outlined. The certificate of incorporation contained certain rather unusual provisions upon which the plaintiff in part rests his claim and which we shall later discuss. The officers of the Miles Company consist of the defendant Northrup, who is president of the Newman Company, as president; the defendant Usher, who is treasurer of the Newman Company, as treasurer; and the defendant Hine, who is a vice president of the Newman Company, as vice president; and the directors of the Miles Company consist of these three men, also directors of the Newman Company, and two others who are not officers or directors of that company. Northrup, Usher and Hine and their families own 6048 shares of the 9349 outstanding shares of common stock of the Newman Company, and 2171 shares of the 5349 shares of preferred stock; and the defendant directors and their families as a group own 7298 shares of the former and 3628 shares of the latter.

The plaintiff claimed at the trial that the transaction between the companies was of such a nature that the defendants had the burden of proving that it was fair to the Newman Company and its stockholders and upon an adequate consideration, but the trial court ruled that the plaintiff had the burden of proving facts entitling him to relief. Where a director of a corporation enters into a transaction with it which will inure to his individual profit, we have held that he has the burden of proving that the transaction is entirely fair, made in good faith, for an adequate consideration and upon a full understanding; and that, whether or not it

meets this test, if his vote alone or in conjunction with that of other directors having a like interest is necessary to effectuate it, the transaction is voidable at the election of an interested party. *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 138, 23 Atl. 708; *Sisk* v. *Jordan Co.*, 94 Conn. 384, 389, 109 Atl. 181, 519; *Massoth* v. *Central Bus Corporation*, 104 Conn. 683, 688, 134 Atl. 236. Similar principles apply as regards a transfer of assets by one corporation to another where the corporations are controlled by common members or the same interests and the result of the transaction may be to profit those owning the beneficial interest in one corporation at the expense of those having such an interest in the other. *Geddes* v. *Anaconda Mining Co.*, 254 U. S. 590, 599, 41 Sup. Ct. 209; *Pepper* v. *Litton*, 308 U. S. 295, 306, 60 Sup. Ct. 238; Noyes, Intercorporate Relations (2d Ed.), p. 217. The basis of these rules is that the benefit which may inure to the director personally, or to others having interests adverse to those of the corporation, affords ground for suspicion that he has not given to the corporation he represents and its stockholders the undivided loyalty which he owes to them. *Wardell* v. *Railroad Co.*, 103 U. S. 651, 658, 26 Law. Ed. 509; *Render* v. *Arkansas Valley Trust Co.*, 196 Fed. 1, 4, 115 C. C. A. 635; 2 Machen, Corporations, § 1563.

It may well be that this principle would not apply where the directors instrumental in bringing about a transaction will profit or lose only in proportion to their stockholdings in the corporation and so upon the same basis as would other stockholders. Indeed, if the fact that profit would come to directors of a corporation, solely by reason of their stock ownership, from their adoption of a particular business policy were made the criterion of the application of the rule, the extent to which minority stockholders could interfere with the

management of the corporation would seriously handicap the conduct of its business. In the main, that was the situation in this case; but, as we shall point out, there were certain features in the transaction which would give to the defendant directors a power of control over the affairs of the Miles Corporation disproportionate to the interests the plaintiff was entitled to have in it. The trial court was in error in overruling the plaintiff's claim that the burden of proof to show that the transaction was fair to the Newman Company and its stockholders and upon an adequate consideration was upon the defendants. Whether or not upon this appeal we could hold that error harmless we do not need to consider, because there was also error in substance in the decision.

One of the principal claims of the plaintiff is that the transfer of the business of manufacturing and selling the Miles garment and of the assets of the Newman Company involved in that business is invalid unless the situation is within the provisions of §§ 3384 and 3385 of the General Statutes. Section 3384 provides that a corporation like the Newman Company "may, unless otherwise expressly provided in its charter or certificate of incorporation, when authorized by a vote of two-thirds of all its outstanding stock of each class, at a meeting duly warned and held for the purpose, sell, lease or exchange all its property and assets, including its good will and franchise, upon such terms and conditions as it shall deem expedient"; and § 3385 provides that any stockholder who, "at the stockholders' meeting at which such sale, lease or exchange shall have been authorized," voted against it may not prevent or delay the sale, lease or exchange, but that if he takes certain steps he is entitled to receive from the corporation the value of his stock. Section 3384 clearly applies only to the sale, lease or exchange by a

corporation of "all its property and assets," and this
language is emphasized by the addition of the words
"including its good will and franchises."

In this case, not only was there no sale of all the
property of the Newman Company but the trial court
has found that the assets sold to the Miles Company
did not constitute such an integral part of the business
of the Newman Company as to be essential to it, and
that the business and assets sold are not essential to
the ordinary operation of the business of the company.
A comparison of the value of the assets of the New-
man Company with the value of the assets sold, and
of the operating profit of the company with the esti-
mated profit from the sale of the Miles garment, and
consideration of the fact that the Newman Company
retains its established business and only transfers an
undertaking which at most is experimental amply
justify these conclusions. Our statute is not like that
of New York, which authorizes a corporation, with the
consent of two-thirds of its stock, to sell its property,
rights, privileges and franchises "or any interest
therein or any part thereof"—a statute which was
before the court in *Matter of Timmis*, 200 N. Y. 177,
93 N. E. 522; nor like the similar provision of the
Maine statute before the court in *Royal Indemnity
Co.* v. *American Bond Co.*, 289 U. S. 165, 53 Sup. Ct.
551, which applied to the sale of the franchises, entire
property or any of the property of a corporation "es-
sential to the conduct of its corporate businesses or
purposes"; nor even like the Ohio statute before the
court in *Geiger* v. *American Seeding Machine Co.*, 124
Ohio St. 222, 177 N. E. 594, 79 A. L. R. 614, which
applied to the sale of "all or substantially all" the
assets. We are not even called upon to determine
whether our act could be construed to cover a sale of
"substantially all" the assets of a corporation which,

according to the headnote, the Illinois Court of Appeals held to be within a statute of that state quite similar to ours. *Fisk* v. *Toys & Novelties Publishing Co.,* 259 Ill. App. 368. We cannot construe our statutes as applicable to the sale by the Newman Company of the business and assets connected with the manufacture and sale of the Miles garment. See *Shaw* v. *Hollister Land Co.,* 166 Cal. 257, 135 Pac. 965; *Baldwin* v. *American Trading Co.,* 76 Cal. App. 80, 243 Pac. 710; *Painter* v. *Realty Co.,* 29 Ohio App. 123, 128, 163 N. E. 57.

Aside from the statute the plaintiff has no right to prevent the transfer of the leases and assets from the Newman Company to the Miles Company. Previous to the enactment of the statutes, a sale of all the property and assets of a corporation not insolvent or in failing circumstances was generally considered to be ultra vires and could be prevented by a nonassenting stockholder; *Bassett* v. *City Bank & Trust Co.,* 116 Conn. 617, 628, 165 Atl. 557; this was because it was felt that such a transaction would defeat the implied contract among the stockholders of the corporation to pursue the purpose for which it was chartered. *Geddes* v. *Anaconda Copper Co.,* supra, 596. It may be that this reason would extend to the sale by a corporation of a part of its property "so integral as to be essential for the transaction of its ordinary business, because such a sale is wholly or partly an act of self-destruction and a practical dissolution without compliance with law"; *Matter of Timmis,* supra, 181; or to the sale of so much of its property "as renders the corporation unable to continue business and carry out the purpose of its formation." *In re De Camp Glass Casket Co.,* 272 Fed. 558, 564. Whether the common law of Connecticut is in accord in all respects with what is said in those decisions is open to question; see *Bartholo-*

*mew* v. *Derby Rubber Co.*, 69 Conn. 521, 528, 38 Atl. 45; *Woodbridge* v. *Pratt & Whitney Co.*, 69 Conn. 304, 330, 37 Atl. 688; *Second Universalist Church* v. *Colegrove*, 74 Conn. 79, 84, 49 Atl. 902; but it is to be noted that these were cases where no stockholder dissented. Nor is the view above expressed everywhere accepted. *Maxler* v. *Freeport Bank*, 275 Pa. 510, 513, 119 Atl. 592; *Bowditch* v. *Jackson Co.*, 76 N. H. 351, 82 Atl. 1014; 6 Fletcher, Cyc. of Corporations, § 2947, p. 1031. We are, however, cited to no authority and have found none to support the contention that a minority stockholder can, in the absence of some inequity or unlawfulness, prevent a corporation from transferring to another corporation an undertaking which is not essential to its usual business, upon which it has embarked only in an experimental way and which represents a very small portion of its business and assets. 6 Fletcher, op. cit., § 2925.

The transfer of the business of manufacturing and selling the Miles garment and of the assets connected with it to the Miles Company does not involve a fundamental change in the legal plan and scope of the corporate business of the Newman Company and does not, therefore, in itself require the assent of all the stockholders. Whether or not the plan proposed should be adopted presented a matter of business policy. *Van Tassel* v. *Spring Perch Co.*, 113 Conn. 636, 645, 155 Atl. 832. Unless in some way the legal rights of the plaintiff have been invaded, he cannot as a minority stockholder prevent its consummation. He claims that the consideration received by the Newman Company is inadequate. In particular he contends that no provision is made for the reimbursement of the Newman Company for certain values transferred and for certain expenses it has incurred and losses it will sustain as a result of the transfer; and he points to

the fact that the preferred stock which the Newman Company will receive has no present market value and its ultimate value will depend upon the success of the Miles Company, and that the payments of royalties to the Newman Company will be postponed until 8000 dozen Miles garments have been sold. He loses sight of the fact that the Newman Company will receive, at the price of only 12 cents a share, 9349 shares of the common stock of the Miles Company; and, if the defendant directors are right in their belief that the business to be conducted by the Miles Company will prove successful, there can be little doubt that the value of both the preferred and common stock will far exceed the amount of the items upon which the plaintiff rests his contention. Such prospective results of the transaction are properly to be taken into account. *Coler* v. *Tacoma Railway & Power Co.*, 64 N. J. Eq. 117, 121, 53 Atl. 680. The postponement of the time for payment of the royalties to enable the Miles Company better to accumulate working capital may well be an advantage rather than a loss to the Newman Company and its stockholders. The trial court held that the consideration received by the Newman Company was fair and adequate. We certainly cannot hold it to be so grossly inadequate as to entitle the plaintiff to equitable relief. See *Van Tassel* v. *Spring Perch Co.*, supra, 646.

The plaintiff contends that the effect of the proposed plan will be to deprive him of his interest in a portion of the assets of the Newman Company and force him to take, in lieu of it, shares of stock in the Miles Company, and that this is an invasion of his rights, citing *Schwab* v. *Potter Co.*, 194 N. Y. 409, 87 N. E. 670. That case presented a situation in many respects like the one before us, but with these distinguishing features: The property to be transferred

to the corporation to be organized consisted of all the real estate owned by the defendant corporation, constituting most of its property, and it had debts substantially equal to its other assets; and, while each stockholder was given the right to subscribe to stock in the new corporation at par and could assign that right, it was forfeited unless exercised within a limited time. It was held that the defendant corporation had no power in that way to organize the new corporation, and that a minority stockholder could not be compelled to buy stock in the new corporation in order to save his interest in the defendant company. The authorities are in disagreement upon the question whether, where a corporation transfers all its assets to another corporation, it can accept, as consideration, stock of the latter for distribution among its stockholders. See *Byrne* v. *Schuyler Electric Mfg. Co.*, 65 Conn. 336, 352, 31 Atl. 833; 6 Fletcher, Cyc. of Corporations, § 2950. But whatever be the true rule where all or substantially all the assets of a corporation are so transferred, the situation before us is essentially different in that only a small portion of the Newman Company assets and business is to be transferred.

A manufacturing corporation organized under the laws of this state, when not prohibited by any provision in its charter or certificate of incorporation, has power to acquire and hold the stock of another corporation; General Statutes, § 3423; and if such stock represents a surplus of assets properly distributable to stockholders, it may be so distributed as a dividend. *Union & New Haven Trust Co.* v. *Taintor*, 85 Conn. 452, 455, 83 Atl. 697; *Union & New Haven Trust Co.* v. *Sherwood*, 110 Conn. 150, 163, 147 Atl. 562. That will be the effect of the proposed action in this case, and we can see nothing unlawful in it. *Butler* v. *New Keystone Copper Co.*, 10 Del. Ch. 371, 381, 93 Atl. 380.

The proposal that the Newman Company advance sums of money not to exceed $35,000 to the Miles Company, if the plan is not otherwise unlawful, finds sufficient justification in the fact that only if the latter company is successful will the preferred stock to be taken by the former in payment for assets transferred be of value or will the royalties upon the sale of Miles garments be realized; and the making of the loan will be within the implied powers of the Newman Company. *S. O. & C. Co.* v. *Ansonia Water Co.,* 83 Conn. 611, 633, 78 Atl. 432; *Knapp* v. *Tidewater Coal Co.,* 85 Conn. 147, 155, 81 Atl. 1063; *Holmes* v. *Willard,* 125 N. Y. 75, 81, 25 N. E. 1083; 6 Fletcher, op. cit., §§ 2619, 2621.

The remaining claim of the plaintiff is that there are certain provisions in the certificate of incorporation of the Miles Company which constitute such an invasion of his rights as entitle him to relief. One of these is to the effect that no stockholder shall have the right to purchase or subscribe for unissued or additional stock or bonds or other securities convertible into stock, but that they may be issued and disposed of by vote of the directors to such persons and upon such terms as they shall determine. Another provision is that the directors may submit any act or contract to a meeting of the stockholders for approval or ratification and, if a lawful quorum of stockholders is represented in person or by proxy and the act or the contract is approved or ratified by vote of the holders of a majority of the stock so represented, it will be as valid and binding upon the corporation and all its stockholders as though it had been approved and ratified by every stockholder, whether or not it would otherwise be open to legal attack "because of directors' interest or for any other reason."

If a person voluntarily becomes a stockholder in a

corporation the charter of which contains a provision such as the first of these, it may be that he cannot claim any pre-emptive right to additional stock thereafter issued by the corporation; see *Milwaukee Sanitarium* v. *Lynch*, 238 Wis. 628, 300 N. W. 760; *Albrecht, Maguire & Co., Inc.* v. *General Plastics, Inc.*, 256 App. Div. 134, 9 N. Y. S. (2d) 415; although the danger to the interests of minority stockholders is apparent, where the directors own a majority of the outstanding stock. An act or contract which is voidable by reason of the personal interest of a director or directors may be authorized in advance or ratified by the stockholders, at least if all join; *Massoth* v. *Central Bus Corporation,* supra, 689; one who voluntarily becomes a stockholder in a corporation may have no legal ground of escape from the effects of such a provision as that to which we have referred; but there is a serious question as to the provision for the validation of acts or contracts open to attack "for any other reason." This would in terms include acts or contracts violating provisions of statute law, and those which are tainted by actual fraud; and public policy might well forbid the recognition of the validity of such a provision. See *Ford* v. *Dubiske & Co., Inc.*, 105 Conn. 572, 576, 136 Atl. 560.

The position of the plaintiff is not, however, the usual one where a person subscribes for or buys stock in a corporation. The purpose of the proposed plan is to effectuate a method of carrying on the business of manufacturing and selling the Miles garments calculated to be more advantageous to those owning the beneficial interest in the Newman Company than if the company itself proceeded with that business. Under the proposed plan the plaintiff will receive, as a dividend, stock in the new corporation; and, while this is not found to be so, it is very obvious that this

stock has no present market value. The reason why a stockholder in a corporation has in general a preemptive or prior right to subscribe for or purchase additional stock in proportion to his holdings is that his ownership of a certain number of shares entitles him to a certain part in the assets and management of the corporation, and he is entitled of right to the opportunity to preserve his proportionate voice and interest. *Stokes* v. *Continental Trust Co.*, 186 N. Y. 285, 299, 78 N. E. 1090; 11 Fletcher, op. cit., § 5135, p. 221.

As regards the business of manufacturing and selling the Miles garment, the plaintiff would have that share in it so long as it continued to be carried on by the Newman Company. Under the proposed plan, whether, after the transfer of the business to the Miles Company, as it is organized, he will continue to have the same proportionate interest will depend upon the will of the directors of that company. When to this fact is added the further consideration that three of the defendants are a majority of the directors of the Miles Company and own a majority of the common stock, which alone has voting power, and that any act they may do as such directors in their private interests may, despite objection by the plaintiff, be validated by their votes as stockholders in a stockholders' meeting, the extent to which the interest of the plaintiff in the portion of business to be transferred to the Miles Company will be subject to the control of the defendant directors is apparent. The provisions in the certificate of incorporation of the Miles Company to which we have referred seem indeed to represent a studied effort on the part of the defendant directors to forestall objection by the plaintiff as a minority stockholder to any acts which those who constitute a majority of the board of directors and who own a majority

of the stock of the company may see fit to adopt, no matter how far his interests in the business may be subordinated to theirs. Even if it be so, as the defendants suggest, that the certificate of incorporation of the Newman Company might be amended to include such provisions, it could only be done upon approval by a vote of two-thirds of the outstanding shares of stock at a stockholders' meeting; General Statutes, § 3461; and the very directors who were instrumental in causing the provisions to be inserted in the certificate of incorporation of the Miles Company might not agree to their insertion in that of the parent company. The proposal is, by reason of these provisions in the charter of the Miles Company, inequitable as regards the plaintiff, and the trial court was in error in denying him relief. See *Dunlay* v. *Avenue M Garage & R. Co.*, 253 N. Y. 274, 278, 170 N. E. 917; *Elliott* v. *Baker*, 194 Mass. 518, 522, 80 N. E. 450; Noyes, op. cit., p. 217; 13 Fletcher, op. cit., § 5829.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.