## The J. B. Owens Pottery Company vs. The Turnbull Company.

Third Judicial District, Bridgeport, April Term, 1903.
Torrance, C. J., Baldwin, Hamersley, Hall and Prentice, Js.

The defendant leased certain floor space in its retail department store to one G, who was to carry on there, as owner, the crockery and house-furnishing business. The lease provided, however, that its existence should not be disclosed by either party, and that the business should be conducted in such a manner as to indicate to the public that it was a mere branch or part of the defendant's business. Preparatory to opening this department G bought certain goods of the plaintiff on credit, representing himself as an agent and buyer for the defendant. Relying upon these representations, the goods were billed and shipped by the plaintiff to the defendant, who paid the freight and turned them over to G for sale in his department. About three months later G became insolvent and left town, and upon the plaintiff's request for a remittance the defendant for the first time disavowed its responsibility for G's purchase. *Held* that if the agreement did not impliedly confer upon G the right to use the name and credit of the defendant in the purchase of necessary stock, its prolonged silence and acquiescence, under the circumstances disclosed by the finding, constituted a clear case of ratification of his purchase, and rendered the defendant liable therefor.

Argued April 16th—decided June 4th, 1903.

Action for goods sold and delivered, brought to the District Court of Waterbury and tried to the court, *Cowell, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

The defendant is a corporation conducting, in its name, a retail department store in Waterbury; the plaintiff is a corporation of Ohio engaged in the manufacture of certain lines of household supplies. December 28th, 1901, the defendant and one Gilbert entered into a written agreement in the form of a lease, and sealed and acknowledged as a lease of lands, which was to continue in force for the term of three years from January 1st, 1902, and which had for its purpose the

conduct by Gilbert of a crockery and house-furnishing department in the defendant's store. By this agreement the defendant leased to Gilbert certain floor space in its store, to be occupied and used by Gilbert exclusively for the sale of crockery, glassware, lamps, tin and woodenware. The rent to be paid was a specified per centum of all the lessee's gross sales, the same to be paid and settled weekly. All moneys received from sales and all charge slips for goods sold were to be sent immediately after each transaction to the office of the lessor, who was to retain the money. Each Saturday Gilbert was to send to the office a list of all salaries due from him to the clerks and employees. These sums the lessor was to pay to the several persons entitled to them, and on Monday the balance left in the lessor's hands, less the amount of the rental based upon the sales as aforesaid, was to be paid over to Gilbert. All clerks and employees of the lessee were to be subject to all the rules and regulations made by the lessor for the management of its store. The lessor was to make all deliveries in Waterbury, and advertise the lessee's wares in the newspapers, giving him such space as he might desire, he agreeing to recompense the lessor for the cost of such advertisements. It was provided that the lessee should not place his own name or signs, or any other name or signs than the lessor's, upon any part of the premises, and that all goods sold should be sold under the defendant's name. It was further provided that the parties to the lease should keep the same strictly confidential, and that it should not in whole or in part be disclosed to any person.

On or about January 3d, 1902, Gilbert, in preparation for opening the department thus provided for, visited the plaintiff's factory in Zanesville, Ohio, and, representing himself to be an agent and buyer for the defendant, purchased a bill of goods upon credit, the same being the goods embraced in the bill of particulars. The plaintiff believed Gilbert, and supposed that it was selling to the defendant and gave credit to it alone; otherwise the plaintiff would not have made the sale. The goods were addressed to the defendant and shipped on January 3d. On the same day a detailed bill of

the goods containing the terms of sale was made out to the defendant and mailed to its address. The goods arrived on January 29th and were received by the defendant, who paid for the freight and cartage, and they were by it turned over to Gilbert for sale in his department, where they remained, save as sold from time to time, until taken on attachment and execution, as hereinafter recited.

Gilbert continued his relations with the defendant under said agreement, until about the middle of April, 1902, when he left Waterbury. Meanwhile his department was conducted as the lease provided. So far as was apparent to the public or the employees in the store, there was no distinction between this department and the rest of the store, and it appeared, like the rest, to be owned and managed by the defendant. It was the intention of the defendant that such should be the case, and that Gilbert's department should appear to the public and third parties as belonging to the defendant and be so considered, and that Gilbert should appear and be considered to be the buyer for and manager of said department.

April 21st, 1902, suit was brought against Gilbert and a portion of the stock in said department attached. To satisfy the judgment in such suit, and another which followed it, on April 25th all of the goods in said department were taken and sold on execution.

May 3d, 1902, the defendant received from the plaintiff another bill similar to that of January 3d, with a request for remittance. To this the defendant, by its attorneys, replied immediately, disclaiming liability. This was the first and only notice of disavowal of responsibility for Gilbert's acts the defendant ever sent the plaintiff. This disavowal was unreasonably delayed and prejudicial to the plaintiff.

The plaintiff's bill, which is a fair and reasonable one, has never been paid.

*Terrence F. Carmody*, for the appellant (defendant).

*Ulysses G. Church*, for the appellee (plaintiff).

PRENTICE, J. The judgment rendered in this case was amply justified by the facts found. It is quite true that the written instrument which evidenced the relations between the defendant and Gilbert did not expressly authorize the latter to pledge the credit of the former. The agreement, however, had for its purpose the conduct of a mercantile business to be carried on in the defendant's store, under its name, and to all outward appearances as its business. This undertaking necessarily involved purchases of stock. The agreement was explicit in requirements which should give to the business to be conducted by Gilbert every appearance of a department of the defendant's business. The effort to conceal from the public Gilbert's true relation as principal is manifest throughout the document. To make this result the more secure, there follows the sweeping provision that it should be kept strictly confidential and should not in whole or in part be disclosed to any person. The effect of this provision is apparent. By force of it it is not easy to discover why the right to use the name and credit of the defendant in the purchase of necessary stock was not impliedly conferred upon Gilbert, unless, indeed, it be upon the theory that no credit at all was to be used.

It is a little hard to conceive of a mercantile business, of the magnitude and character of that apparently contemplated by these parties, being carried on under modern conditions, without some degree of credit for purchases. Let us, however, assume that such a method was intended to be employed with respect to this business, and give the defendant the full benefit of its contention that Gilbert was without authority, express or implied, to purchase in its name or upon its credit. On January 3d, 1902, Gilbert, purporting to act for the defendant, ordered of the plaintiff the goods which are the subject of this suit. Credit for them was given to the defendant alone. Within a few days the defendant was informed of Gilbert's purchase and that it was a credit purchase, by the receipt, in the ordinary course of mail, of a bill of the goods with terms of sale, which was mailed to the defendant on the day of purchase. *Pitts* v. *Hartford L. & A. Ins. Co.*,

66 Conn. 376. These facts alone, in view of Gilbert's agreement as to secrecy, sufficiently advised the defendant that the credit given was, presumably at least, credit to it, the only party whose name could be divulged. That the bill was made out to it and sent to it emphasized and made certain the otherwise reasonable conclusion. The arrival of the goods two weeks later, addressed to it, was an additional reminder of what had been done. Notwithstanding the knowledge thus derived, the defendant kept silence. It did nothing to advise the plaintiff of the true situation during the two weeks which elapsed while the goods were in course of shipment. The goods came and were received by the defendant without a word of warning. The silence was continued as the weeks lengthened into months, and until after Gilbert's affairs had suffered a hopeless collapse and all means of protecting the plaintiff's interests had disappeared. A clearer case of ratification by silent acquiescence could scarcely be stated. The defendant's knowledge of the material facts was complete ; the duty to speak manifest ; and the silence without excuse was unreasonably prolonged and prejudicial to the plaintiff, as the court with ample justification has found. *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131.

In view of our reasons for our conclusions, it is unnecessary to notice the defendant's motion to add to and correct the finding, further than to observe that paragraph 81 is justified by the evidence, and that paragraph 64, in its portion excepted to, only states a fact apparent in the written agreement which is made a part of the finding.

There is no error.

In this opinion the other judges concurred.