[No. 6,310.—Department No. 1.]

## MONTGOMERY v. SPECT.

MORTGAGE—DEED INTENDED AS A MORTGAGE—DEFINITION.—Whether a deed
absolute in form is a mortgage, is a question of intention, to be determined
from all the facts and circumstances of the transaction, taken in connection
with the conduct of the parties after the execution of the deed.

ID.—ID.—PRESUMPTION.—In such cases, in order that the deed be held a
mortgage, the central fact to be found is the existence of an indebtedness at
the time of the transaction, (forming the consideration of the deed) and a
continuation of the relation of debtor and creditor. If this is found, the
inference is, that the deed was not made to transfer the title, but to secure
the debt.

ID.—ID.—EJECTMENT—JUDGMENT.—In an action of ejectment, the defendant
set up the defense that a deed from him, under which the plaintiff claimed,
was in reality a mortgage; and the Court having found to that effect, the
judgment was that the plaintiff, upon the payment of the debt within a speci-
fied time, should convey to the defendant, and that if the defendant, within
the time specified, failed to pay the debt, the affirmative relief demanded by
him should be denied, and his bill asking for the same be dismissed, and
upon appeal the judgment was affirmed.

APPEAL from a judgment for the defendant, and from an
order denying a new trial, in the Tenth District Court, County
of Colusa. KEYSER, J.

The complaint is in the ordinary form in ejectment. The
defendant in his answer denies all of the allegations of the com-
plaint, and sets up specially the facts stated in the opinion, and
prays for affirmative relief.

The judgment is that the plaintiff, upon payment to him by
defendant Spect of the sum of $9,000, convey to the said de-
fendant the land in controversy; and, upon his failure to do so
for ten days after tender to him of said sum, that a deed be ex-
ecuted by the clerk of the Court, appointed commissioner for
that purpose ; and that if the defendant fail to pay the plaintiff
the said sum of $9,000 on or before the 10th day of September,
1879, then the affirmative relief demanded by him be denied, and
his bill asking for the same dismissed.

The other facts are stated in the opinion.

*W. C. Belcher,* and *W. F. Goad,* for Appellant.

The evidence was insufficient to justify the finding, that the
deed was intended to secure the payment of a debt, and so was

intended to be a mortgage. There was no subsisting debt or obligation from Spect to Montgomery. His obligations were settled and discharged at the delivery of the deed, and he contracted no new obligation to pay. (Civ. Code, § 2924; *Henley* v. *Hotaling*, 41 Cal. 28; *Page* v. *Vilhac*, 42 id. 75; *Koch* v. *Briggs*, 14 id. 256; *Ford* v. *Irwin*, 18 id. 117; *Farmer* v. *Grose*, 42 id. 173; *Conway* v. *Alexander*, 7 Cranch, 218; *Glover* v. *Payne*, 19 Wend. 518; *Robinson* v. *Cropsey*, 2 Edw. Ch. 138; *Magee* v. *Catching*, 33 Miss. 672, 693; 1 Greenl.; Cruise's Digest, 562, note; *Hughes* v. *Sheaff*, 19 Iowa, 335; *Saxton* v. *Hitchcock*, 47 Barb. 220, citing 4 Kent, (144) note *c; Reading* v. *Weston*, 9 Conn. 143; *Snavely* v. *Peck*, 29 Gratt. 27, 35.)

*A. L. Hart, John T. Harrington,* and *Wm. G. Dyas,* for Respondent.

The findings were fully justified by the evidence. (*Kuhn* v. *Rumpp*, 46 Cal. 299; *Hickox* v. *Lowe*, 10 id. 207; 4 Kent, 143; *Sears* v. *Dixon*, 33 Cal. 326.)

McKEE, J. :

Whether a deed absolute in form be a mortgage, is a question of intention to be inferred from all the facts and circumstances of the transaction in which the deed was executed, taken in connection with the conduct of the parties after its execution. In such cases, the central fact to be found is, the existence of an indebtedness at the time of the transaction, and a continuation of the relation of debtor and creditor. If that fact be found, the inference deducible from it is, that the deed was not made to transfer the title to the land described in it, but was made for the purpose of securing the debt which the grantor owed to the grantee.

It is essential, say the Court in *Hanley* v. *Hotaling*, 41 Cal. 23, that there be an agreement, either express or implied, on the part of the mortgagor, or some one in whose behalf he executes the mortgage, to pay to the mortgagee a sum of money. So, in *Snavely* v. *Peck*, 29 Gratt. 35, the Court of Appeals of Virginia say: " That it is essential to a mortgage that there should be a debt to be secured. It may be antecedent to, or

created contemporaneously with the mortgage." The only inquiry, then, necessary to be made is, whether the relation of debtor and creditor remains, and a debt still subsists between the parties. If it does, then the conveyance must be regarded as a security for the payment, and be treated in all respects as a mortgage. (*Robinson* v. *Cropsey*, 2 Edw. Ch. 138; *Slee* v. *Manhattan Co.* 1 Paige, 56.)

The fact of a subsisting debt, to secure the payment of which a deed of real property may be given, must be proved like any other fact in a case. "But," as Mr. Justice Gaston says, in *McDonald* v. *McLeod*, 1 Ired. Eq. 227, "in examining transactions between borrowers and lenders, and between necessitous men and their creditors, courts of equity, aware of the unequal relation of the parties, and of the facility by which the former may be surprised into improvident arrangements, and of the moral coercion which the latter can exercise over their apparent freedom of action, are particularly attentive to any circumstances tending to show an inconsistency between the form of an act and the intent of the parties, and will take great pains to get at the substance of what was done or intended to be done by them."

Examining by these rules the facts and circumstances of the transaction in which the deed in the case in hand was executed, we think that the fact of an indebtedness between the grantor and the grantee in the deed is fairly established by a preponderance of evidence. The defendant owed to the plaintiff an antecedent debt, which was secured by a mortgage upon a portion of the premises now in controversy. Upon that mortgage debt the plaintiff had brought an action of foreclosure, and obtained a decree, in which the Court found that there was due and owing to the plaintiff $6,648.87, for principal and interest, counsel fees and costs, and directed a sale of the mortgaged premises to satisfy the same. Defendant wanted another year to pay the amount, at $1\frac{1}{4}$ per cent. per month interest, by giving another mortgage upon the same property. The plaintiff declined to take another mortgage, because, as he objected, the property was not worth enough to justify the expenses of another foreclosure and sale. Defendant offered to increase the security, by giving all the real property which he had—property esti-

mated by him to be worth $40,000, by the plaintiff at $10,000, and which the Court below found to be of the value of $25,000. To this the plaintiff seemed to assent. Both preferred that the transaction should take the form of a deed instead of a mortgage—the defendant, because he had been charged double taxation—taxes upon the land and also upon the mortgage; the plaintiff, because in that way he would avoid the expenses of a foreclosure and sale. The whole matter was referred to the agent of the plaintiff for consummation. The agent computed interest upon the amount of the decree up to the date of the execution of the deed, added the sum of $200, which his principal had advanced to the defendant for part payment of a judgment against him, making the sum of the indebtedness which the defendant then owed to the plaintiff $7,000. This amount was agreed to as correct, and was inserted as the consideration of the deed. Simultaneously with the execution of the deed, an agreement was executed and delivered to the defendant, conditioned for a reconveyance of the property upon payment of the sum of $7,000, with interest at 1¼ per cent. per month, within one year from the date thereof.

There is, of course, no question as to the form of the transaction. The defendant is emphatic in his testimony as to his intention and understanding of the purpose for which the transaction was made to assume that form. The agent with whom he transacted it is undecided and more uncertain as to the purpose. When asked, in substance, whether he did or did not know that the deed was made to secure the payment of the $7,000, he answered: " Well, what I did in it I know. The work I did in it I know, and I thought I was taking a deed." And on recross-examination, he thus testified:

" Q.—When he came to you, did he propose to make a mortgage?

" A.—He said he would like to make a mortgage.

" Q.—You told him you would not take a mortgage?

" A.—I told him that I could not stand foreclosing; that the property was not worth it, and I would not take a mortgage. That was my direction from Montgomery.

" Q.—You told him you would take a deed—an absolute deed?

" A.—Yes, sir.

" Q.—And he agreed to that, did he?

" A.—He signed the deed. *I do not remember the conversation that took place about it. He signed the deed I had made out.*"

Spect gave no note or memorandum for the payment of the $7,000 and interest. Nor does the written agreement contain any promise by him to pay. But this circumstance does not make the conveyance less effectual as a mortgage, if, in fact, there was a debt. (*Flagg* v. *Mann*, 2 Sum. 533; *Scott* v. *Fields*, 7 Watts, 360.) Had there been such a promise, or if such a note or memorandum had been given, it would have been, in itself, strong, if not conclusive, evidence of the existence of a debt. (*Hickox* v. *Lowe*, 10 Cal. 197.) But, although there was no personal obligation on the part of Spect to pay the $7,000 with interest, there is one circumstance which tends to raise a presumption of loan, or indebtedness, and that is, that the sum to be paid by Spect, in case he desired a reconveyance, was the precise amount expressed as the consideration in the deed, with interest at 1¼ per cent. per month. This fact alone would be insufficient to show that the money to be paid was a debt. (*Farmer* v. *Grose*, 42 Cal. 169.) But when, in addition to it, the Court finds that the value of the land was $25,000, and it is proved that Spect remained in possession of it all, and made improvements on portions of it to the value of $3,400, and collected the rents and profits of it all, and occasionally sold some of the land, and received the proceeds of the sales, it is difficult to resist the conclusion that both parties really understood and intended the transaction to be a mortgage. Besides, Montgomery, at Spect's request, conveyed to the wife of the latter, without consideration, some portions of the property on which the improvements alone were assessed at $1,400, and he allowed judgments against Spect to be enforced against the property, which he afterward redeemed from the execution sales, and charged the redemption money to Spect. If the deed had been executed for the purpose of transferring the title of the grantor to the lands described in it, judgments against Spect would have been worthless, as Montgomery himself testified, for the deed included all real property which Spect

owned or was possessed of; yet, after the deed, Montgomery advanced money to and for him at 1¼ per cent. per month, paid taxes for him, on which he charged him two per cent. per month, and bought up claims in notes and judgments against him. It is not according to the ordinary course of things that a man would deal in that way with reference to property of which he believed himself to be the owner.

Moreover, on the 6th of October, 1876, before the expiration of the year mentioned in the agreement for the purchase of the lands, Montgomery made out and presented to Spect an account or memorandum of the principal and interest due upon the $7,000, and of the advances in money which he had continued to make for the latter from the date of the deed. The whole amounted to $8,485.90. Upon this amount Spect was credited with $2,209.18, which he had paid on the transaction from time to time during the year, leaving a balance due to Montgomery of $6,276.12. "This amount," says Montgomery, "was the balance that was between him and me at that time." For this balance Montgomery gave Spect another agreement, as follows : "To allow Spect to purchase all the interest which I now own in the real estate which is described in a deed from said Spect to me, dated October 11th, 1875, at any time between this date and the 6th day of January, 1877, by his paying to me the sum of $6,276.12, gold coin, together with interest on that amount from this date until paid, at the rate of one and one-quarter per cent. per month; and on his paying said sum to me, together with interest as above mentioned, and all sums which I may hereafter pay out on account of said real estate, with interest on such payments at the rate of two per cent. per month, I hereby agree to make him a good and sufficient quitclaim deed to said real estate. Should said Spect neglect or fail to purchase said real estate within the time specified, this agreement shall be void, and in no case shall be construed into a mortgage. October 6th, 1876."

The same course of dealings took place between the parties from that date until January 6th, 1877, when another settlement was had, and a balance struck of $6,950, and Montgomery extended the time for paying it another year, upon the usual terms, by giving a new agreement in writing in substantially

the same terms, except that instead of interest on the amount at the customary rates it was provided that Spect should pay $1,042, for rent of the lands, in monthly installments of $86.88. But this "rent" is the exact equivalent of the monthly rate of interest at which Montgomery loaned the money, and as was said in *Sears* v. *Dixon,* 33 Cal. 326, that itself is a strong circumstance to show the intention of the parties. This "rent" Spect paid regularly every month until January, 1878.

It may be that some of these facts are consistent with a conditional sale of the property, but it seems highly improbable that a business man would have dealt as he (Montgomery) did with the property, which he knew was his own, and which he had contracted to sell to another. Considering all the circumstances of the transaction, and the conduct and dealings of the parties in connection with it, we think it is clear that both parties understood the $7,000 was a subsisting debt, and that the deed, although absolute in form, was intended as security for its payment, and of any other sums which Montgomery might thereafter advance to or for Spect, according to their agreement. In a word, that the real transaction between them was one of mortgage, and not of sale.

There is nothing in the objection that Spect did not tender the amount of his alleged indebtedness, nor do anything else which excused him from making a tender, if the deed were a mortgage. There is no defense, and consequently no proof, of a tender. But it is averred in the answer, that about the 1st of June, 1878, Spect applied to the plaintiff for an account or memorandum of the balance claimed to be due on the indebtedness, including any advances which may have been made since the last settlement, and offered to pay when a deed was prepared under the conditions of the defeasance, but Montgomery refused to render any account or make any statement, claiming that the deed was absolute, and not a mortgage. This application was made, not for the purpose of a tender, but for the purpose of redemption. It was an offer to redeem, and, according to the prayer of his answer, the defendant seeks to redeem. (*Hughes* v. *Davis,* 40 Cal. 121 ; *Pico* v. *Gallardo,* 52 id. 206.)

An equity of redemption is inseparably connected with a mortgage. The right to foreclose and the right to redeem are

coexistent; and until the remedy to foreclose may be barred, the right to redeem may be exercised. As the deed in controversy was a mortgage, the mortgagor has a right to redeem his property from it upon payment of the indebtedness which it was intended to secure. This right was properly guarded by the Court below for the protection of the plaintiff; for the Court, according to the principles of equity, required the defendant to pay the indebtedness found due to the plaintiff within a certain time prescribed by the judgment. We see no error in the findings or judgment.

Judgment and order overruling motion for a new trial affirmed.

McKINSTRY, J., and Ross, J., concurred.