[Civ. No. 5212.    First Appellate District, Division One.—December 30, 1925.]

GEORGE C. BALDWIN et al., Appellants, v. AMERICAN TRADING COMPANY (a Corporation) et al., Respondents.

[1] MORTGAGES—EQUITY OF REDEMPTION—SALE BY MORTGAGOR.—While parties to a contract of mortgage cannot legally stipulate, at the time of the execution of said mortgage, that the mortgagor shall not enjoy the right of redemption, a mortgage debtor, at any time after the execution of the mortgage, by a separate and distinct transaction, may sell or release his equity of redemption as to the mortgagor.

1. See 17 Cal. Jur. 708; 19 R. C. L. 502.

[2] ID.—SUBSEQUENT AGREEMENT TO WAIVE EQUITY OF REDEMPTION—FAILURE OF MORTGAGOR TO PERFORM CONDITIONS.—Where a mortgage executed by a corporation is assigned to a creditor of said corporation and when foreclosure proceedings are about to be instituted, after default, and the corporation and said creditor enter into a new agreement which provides, in effect, that if the corporation does not pay its indebtedness to said creditor within eighteen months the mortgaged property "shall thereafter belong to and be the property of" said creditor, and the corporation and its stockholders (who have full knowledge of the facts) fail to perform the conditions of said new agreement within the time specified, they are not entitled to restrain the operation of the terms thereof.

[3] ID. — CORPORATIONS — COMMON DIRECTOR — VOIDABLE CONTRACTS — RESCISSION.—The fact that one of the directors of said debtor corporation was also a director of the creditor corporation (the assignee of said mortgage) did not render said new agreement void at the option of a stockholder of said debtor corporation, where said agreement was authorized at a meeting of the directors of said debtor corporation at which a majority, other than said common director, was present and acting, and there was no showing that the agreement was in any way unfair, but, on the contrary, the agreement operated to the benefit of the debtor corporation by granting it additional time to pay off its debts and thereby save its property; but even though such agreement had been rendered voidable by reason of the participation of said common director, prompt notice of rescission should have been given and an offer made to restore the creditor corporation to *status quo.*

[4] ID.—SALE OF TANGIBLE ASSETS—CONSENT OF STOCKHOLDERS.—A sale or transfer of all the tangible assets of a corporation without the consent of two-thirds of the stockholders is not in violation of section 361a of the Civil Code.

[5] ID.—ABSENCE OF ACCOUNTING—INJUNCTION TO STAY TRANSFER—AGREEMENT OF PARTIES.—Where said new agreement giving the debtor corporation an extension of eighteen months to pay off its debts and save its property did not contemplate, either expressly or by necessary implication, that a final accounting should be had in the event it did not exercise its rights within said specified time, and said corporation did not within said time make any offer to pay its indebtedness and thereby redeem its property, and the evidence showed that a detailed accounting had been had up to within six months of the commencement of the action by the stockholders of said corporation to enjoin the carrying out of the

2.  See 18 **Cal. Jur.** 69.
3.  See 6 **Cal. Jur.** 1076.
4.  See 7 **Cal. Jur.** 83.

terms of said agreement, the fact that such detailed accounting was not had for the period covering the six months immediately preceding the commencement of said action was not a legal ground for enjoining the consummation of the transfer of the properties in accordance with the plain terms of said agreement.

(1) 41 C. J., p. 771, n. 9; 27 Cyc., p. 1802, n. 48.    (2) 41 C. J., p. 772, n. 31.    (3) 14a C. J., p. 125, n. 16, p. 126, n. 17, 21, 22. (4) 14a C. J., p. 541, n. 82.    (5) 41 C. J., p. 774, n. 73 New.

APPEAL from an order dissolving a temporary restraining order and refusing to grant an injunction *pendente lite*. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank J. Golden, Humphrey, Grant, Zimdars & Warren, Grant & Zimdars and F. M. Angellotti for Appellants.

Knight, Boland, Hutchinson & Christin for Respondents.

KNIGHT, J.—This is plaintiffs' appeal from an order dissolving a temporary restraining order and refusing to grant an injunction *pendente lite*. On December 20, 1921, defendant La Zacualpa-Hidalgo Rubber Co., a corporation, entered into a written agreement with defendant American Trading Company, a corporation, whereby said Rubber Company agreed, in part, that if within a period of eighteen months thereafter an indebtedness owing to said Trading Company, amounting to a sum not less than $167,823.46 nor more than $205,671.34, was not liquidated, said Rubber Company would cause to be transferred to said Trading Company certain real and personal property situate in the Republic of Mexico, as full settlement of said indebtedness. On June 19, 1923, the day before said period of eighteen months expired, and without having paid or offered to pay said indebtedness, plaintiffs, as stockholders in said Rubber Company, commenced this suit in equity to restrain said Rubber Company from executing said transfers as called for in said written agreement, upon the ground that said agreement was invalid; also to require an accounting by said Trading Company, and thereupon, in the event that said Rubber Company failed to discharge its obligations, that plaintiffs and other stockholders be authorized so to do. Upon filing the com-

plaint in said action plaintiffs procured a temporary restraining order enjoining the consummation of said transfers, which was followed by the presentation of a motion for an injunction *pendente lite* for the purpose of continuing in force said injunctive relief until said action was heard and determined. Upon the hearing of that motion said restraining order was dissolved and the court refused to grant a temporary injunction. Plaintiffs have appealed, and, pending the appeal, the court granted a stay of proceedings.

The record upon which the trial court based its rulings consists of the verified complaint in the action and numerous affidavits submitted on behalf of certain defendants. Said affidavits disclose the following facts: For some time prior to 1914 three corporations, operating under the laws of the Republic of Mexico, were engaged in certain enterprises in that country for the production of rubber and coffee. These corporations issued and sold a large number of so-called "acre certificates" which entitled the holder thereof to a portion of the revenue derived from one acre of land. During the operation of these enterprises said corporations incurred a large amount of debts. They borrowed from a bank in Mexico an amount of money equivalent to about the sum of $575,000, United States gold, and to secure the payment thereof gave a mortgage covering certain rubber plantations belonging to them. They also became indebted in a large sum of money to a number of other concerns, among them being said Trading Company. In 1914, at the instance of these latter creditors and pursuant to the laws of Mexico, said corporations executed a so-called "escritura" whereby said corporations admitted their debts and confessed judgment therefor. Later, in 1915, on account of the urgent demands of the mortgagee and the escritura creditors for payment of the obligations due them, said corporations perfected a scheme for the refinancing of their affairs, as a result of which the "acre certificate" holders formed a new corporation under the laws of the state of Nevada, known as the La Zacualpa-Hidalgo Rubber Company (defendant herein) and transferred to it their so-called "acre certificates" in exchange for capital stock and the assumption by said newly formed corporation of the entire outstanding indebtedness of said three corporations. Said Trading Company was one of the principal creditors of said

Rubber Company and for the purpose of receiving further financial aid, and as a part of the refinancing scheme, the defendant Louis A. Ward, who was the executive vice-president on the Pacific Coast for said American Trading Company, was persuaded to become a director in said Rubber Company, and through his efforts and in order to prevent a foreclosure of said mortgage said Trading Company was induced to purchase said mortgage with the understanding that said Trading Company should thereafter hold the same as security for the payment of the total amount of indebtedness owing to said Trading Company, and also as security for any future advances which it might make for the benefit of said Rubber Company. Thereafter said Rubber Company, aided financially by said Trading Company, endeavored for several years to operate said enterprises, but the business was not successful. One of the escritura creditors, George A. Moore & Company, commenced a suit in California against one of the original corporations to recover an amount due under said escritura and obtained a judgment which included the escritura indebtedness of said Trading Company, amounting to $72,993.94; and said George A. Moore & Company was about to enforce said judgment against the coffee interests of said corporation, failing in which the rubber plantations were to be resorted to for the purpose of satisfying said judgment. Finally, in December, 1921, the financial affairs of said Rubber Company seemed to have reached the point of exhaustion. The escritura creditors were making urgent demands for the payment of their claims and said Trading Company was threatening immediate foreclosure of said mortgage. Thereupon, in order to obtain further extension of time for the payment of its debts and thus prevent financial disaster, and for the further purpose of obtaining additional financial assistance from said Trading Company in the operation of its properties, particularly in the matter of making a survey for the discovery of oil, this agreement of December 20, 1921, was made. Said agreement first recites the various indebtednesses owing to said Trading Company; also the fact of the purchase of said mortgage by said Trading Company, the shipment of a consignment of rubber to said Trading Company for the purposes of sale, and the matter of the George

A. Moore & Company litigation. The agreement then provides as follows:

"Whereas, it is desired to settle the accounts between the parties hereto and their mutual rights and obligations in the premises:

"It is therefore mutually agreed as follows:

"1. The first party (the Rubber Co.) is indebted to the second party (the Trading Co.) on every account in the sum of not less than one hundred sixty-seven thousand eight hundred twenty-three dollars and forty-six cents ($167,-823.46), and not more than two hundred five thousand six hundred seventy-one dollars and thirty-four cents ($205,-671.34) (moneys advanced on open account — $86,119.11; moneys advanced to purchase Hipotecario mortgage—$46,-548.29; moneys owing, the payments of which are secured by escritura—$72,993.94) with accruing interest from December 20, 1921, and legal expenses heretofore referred to, subject to any alteration or correction in amount that the facts, when ascertained, may require.

"2. First party hereto agrees to deliver forthwith to second party possession of the said rubber plantations and the personal property situate thereon, and agreed that any interest it may have in said plantations and the said Hipotecario mortgage and the obligation secured thereby, and said rubber in New York and San Francisco, may be held by second party as security for the payment of said indebtedness of amount named in paragraph number one and legal expenses heretofore referred to, and interest from December 20, 1921, at the rate of eight (8%) per cent per annum, . . . "

Continuing, said agreement provides, in substance, that said Trading Company shall operate said properties, sell said consignment of rubber, and render an accounting of such operations to said Rubber Company on March 31, 1922, and quarterly thereafter; that said Rubber Company shall have the right to sell all of its real and personal property at any time within one year for a sum not less than the full amount of the indebtedness due said Trading Company, and upon the payment thereof be entitled to the return of all of said property; but in the event that said Rubber Company failed to pay the full amount of said indebtedness within one year, said Trading Company should have the right at any time

within the succeeding six months to sell said properties, including said mortgage, and after satisfying its demands pay any excess to said Rubber Company. Further provision was made for the advancement by said Trading Company of money for the purpose of making a geological survey for the discovery of oil; also that during the life of said contract, but not exceeding eighteen months from and after the date thereof, said Trading Company should advance to said Rubber Company $4,500 a year for the purpose of defraying its necessary expenses, and that the amount thus paid should be added to its indebtedness, and be secured by said mortgage and the real and personal property, and should ultimately be repaid with interest at eight per cent. Said agreement further provided as follows:

"7. In case the indebtedness of the first party to the second party in said sum named in paragraph number one, plus any indebtedness that may accrue thereunder, and interest, is not paid in full to the second party on or before eighteen (18) months from the date hereof, either from the operation of said properties or the sale thereof, as herein contemplated, or in some other manner, then and in that case, the said rubber plantation and the personal property situate thereon and said Banco Hipotecario mortgage shall thereafter belong to and be the property of the second party, free and clear of any claim of the first party thereto; and in which event the party of the first part will execute and deliver to the party of the second part or its nominee or nominees, any instrument or document of any character which may be deemed by the second party as necessary, requisite or convenient to vest in said second party all the right, title and interest of the first party in and to said plantations and the personal property thereon, and such transfer of the real and personal property shall be considered as full settlement of all indebtedness."

In addition to the foregoing facts the affidavit of the defendant Ward shows that "quarterly during the entire period up to December 31, 1922 (said Trading Company) made financial reports to said La Zacualpa-Hidalgo Rubber Co., and reports from December 31, 1922, up to June 20, 1923, will be made as soon as data therefor is received from the plantations"; said affidavit further avers that pursuant to said agreement the amount due and owing said Trading

Company from said Rubber Company on June 20, 1923, was
$200,272.99, and that on account of plantation and other
expenses said Trading Company had expended approxi-
mately $40,872.26, against which it has received from said
Rubber Company $20,000, and that therefore said Rubber
Company owed said American Trading Company on June
20, 1923, approximately $221,145.25; that there was then
in the hands of said Trading Company 325 bales of rubber
unsold; that the proceeds of sales of rubber had been ap-
plied toward the reduction of the advances mentioned in
said agreement and that those advances had been reduced
approximately $20,000. Other averments contained in said
affidavits tend strongly to refute the estimated value of the
properties of said Rubber Company as fixed by appellants
in the complaint, and show further that owing to the fact
that rubber can be produced much cheaper in the Malay
States the enterprises of said Rubber Company in Mexico
cannot be expected to produce a profit.

[1] Appellants contend that said contract is in effect a
mortgage given as security for the future payment of money
and that the provision therein authorizing a transfer of the
title to the property in the event of a failure to make said
payments is in the nature of a forfeiture and a waiver of the
right of redemption, and therefore is illegal and cannot be
given effect. Supporting this contention appellants cite a
number of authorities which declare the well-established rule
that parties to a contract of mortgage cannot legally stipu-
late, at the time of the execution of said mortgage, that the
mortgagor debtor shall not enjoy the right of redemption
(Civ. Code, sec. 2889; *Bradbury* v. *Davenport,* 114 Cal. 598
[55 Am. St. Rep. 92, 46 Pac. 1062]; *Blodgett* v. *Theins-
child,* 56 Cal. App. 728 [206 Pac. 674]). But appellants
concede it to be the law also that a mortgagor debtor, at
any time after the execution of the mortgage, may, by a
separate and distinct transaction, sell or release his equity
of redemption to the mortgagor (*Watson* v. *Edwards,* 105
Cal. 75 [38 Pac. 527]; 3 Pomeroy's Equity, sec. 1193;
*Phelan* v. *De Martin,* 85 Cal. 365 [24 Pac. 725]; *McDonald*
v. *Huff,* 77 Cal. 279 [19 Pac. 499]).

[2] We are of the opinion that the transaction upon
which this contract is grounded falls within the latter class.
It is evident, we think, from the facts already narrated that

a lien existed against the properties of said Rubber Company several years before the date of the execution of said agreement of 1921. It first came into being when the mortgage was originally given to the Mexican bank and that lien has never since been extinguished. In 1915 said Trading Company acquired all rights under said lien by the purchase of the said mortgage, the understanding at that time being, according to defendants' affidavits, that said mortgage should constitute a lien also for the payment of all other indebtedness due said Trading Company. In 1921, when said Trading Company was about to foreclose said mortgage, the agreement in question was made. Whatever equity of redemption may have previously existed was thereby released. It therefore becomes apparent that the execution of said agreement involved a separate and distinct transaction from the one under which the lien was created and was entered into by said Rubber Company for the purpose of obtaining further extension of time so that it might extinguish said lien and save itself from financial destruction. During the extension of time granted, however, said Rubber Company and its stockholders failed to perform the conditions of said agreement, and, therefore, are not entitled to restrain the operation of the terms thereof.

[3] Appellants next contend that said agreement should be declared void upon the ground that it was entered into under conditions not making for fairness and freedom from undue influence, and, moreover, "should be set aside at the option of a stockholder without any reason other than that it is his wish that it be set aside."

Those contentions are based mainly upon allegations in the complaint to the effect that the defendant Ward was a common director of the Rubber Company and the American Trading Company, and that as a director of said Rubber Company he exercised a dominating influence over two of the officers and directors of that Company, thereby inducing them to enter into said agreement. There is no allegation in the complaint, however, that said contract is unfair in any respect and the record shows that its execution was authorized by the board of directors of said Rubber Company at a meeting at which a majority was present, not including Ward; and, moreover, the agreement itself, when read in the light of the circumstances preceding its execution, shows,

we think, that the result of the execution thereof operated
to the benefit of said Rubber Company by granting to the
stockholders thereof further time and additional opportunity
to pay off its indebtedness and thereby save its property.
The record further shows that the stockholders failed to take
advantage of the opportunity thus afforded, and, although
several stockholders' meetings were held thereafter and a
number of urgent communications were sent to them plainly
describing the serious situation confronting them and urging
that action be taken to pay off the indebtedness and redeem
the property, apparently no such efforts were made; nor was
the fairness or the validity of the agreement during that time
ever challenged. On the other hand, during the period of
said eighteen months said Trading Company, acting upon
the faith of said agreement, advanced more money for the
operation and maintenance of the Rubber Company's prop-
erties. It would therefore seem that if said agreement be
voidable upon the grounds urged by appellants prompt no-
tice of rescission should have been given and an offer made
to restore said Trading Company to the *status quo*. It is
our opinion that the facts of this case clearly distinguish
it from those authorities cited and relied upon by appel-
lants.

[4] Appellants further contend that said agreement pro-
vides "for the transfer of all of the assets and property of
the corporation" and that said alleged transfer not being
authorized by two-thirds of the stockholders is void under
section 361a of the Civil Code. We believe this contention
is disposed of by the case of *Shaw* v. *Hollister Land & Im-
provement Co.*, 166 Cal. 257 [135 Pac. 965], wherein it
was held that a sale of all the tangible property of a corpo-
ration without the consent of the stockholders is not in
violation of said code section. Furthermore, it would ap-
pear that the property of said Rubber Company was vir-
tually disposed of before the execution of the agreement
of December 20, 1921, by the creation of said liens against
it, and that said agreement was made in furtherance of the
operation of said liens.

[5] Lastly, it is contended that appellants are entitled to
an accounting before said transfers of property may be con-
summated. Under a reasonable construction of said agree-
ment the implication seems clear, we think, that a final ac-

counting was not contemplated in the event said Rubber Company failed to exercise its right within said period of eighteen months to pay said indebtedness and redeem said property. As already stated, the affidavit of the defendant Ward shows that on June 20, 1923, the day following the commencement of this action, over $220,000 was due said Trading Company, and nowhere in the record does it appear that there has been an offer made to pay said indebtedness. Moreover, according to Ward's uncontradicted affidavit, an accounting was had up to within six months of the commencement of this action and the approximate total of receipts and disbursements since then is set forth. We think that the fact that a detailed accounting was not had for the period covering the six months immediately preceding the commencement of suit would not under any circumstances serve as legal grounds for enjoining the consummation of the transfers of said property in accordance with the plain terms of said agreement.

For the foregoing reasons we conclude that the trial court did not err in refusing to grant said temporary injunction.

The orders appealed from are affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the supreme · court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1926.