[Civ. No. 13875. Second Dist., Div. Two. Mar. 31, 1943.]

S. B. BASTAJIAN, as Administrator With Will Annexed, etc., Appellant, v. MARGARET BROWN et al., as Executors, etc., Respondents.

Paul Vallée, Astor Elmassian, Geo. C. Woods, C. P. Von Herzen and Burton B. Crane for Appellant.

Reynolds & Painter, Thomas Reynolds, Howard Painter and Sidney A. Cherniss for Respondents.

WOOD (W. J.), J.—Plaintiff has appealed from a judgment whereby the trial court denied plaintiff's petition for the cancellation of a conveyance of real estate and quieted title in defendants.

The action was tried on May 6, 1936. Upon the conclusion of the trial the court made a minute order by which judgment was ordered for defendants. Because of the illness and death of the chief counsel for defendants, proposed findings

were not seasonably delivered to the judge, and on May 11, 1937, counsel for plaintiff prepared findings. These findings and the accompanying judgment were signed and filed by the judge but upon motion of defendants the court on September 29, 1937, made an order vacating the findings and judgment and directing counsel for defendants to prepare findings. This order was made on the grounds that the findings prepared by counsel for plaintiff had been inadvertently signed and that deception had been practiced upon the court in inducing the acceptance of the findings. An appeal was taken from the order of September 20, 1937, resulting in the affirmance of the order upon the ground that the findings and judgment had been inadvertently filed. (*Bastajian* v. *Brown*, 19 Cal.2d 209 [120 P.2d 9].) Thereafter the court filed the findings and judgment from which the present appeal is prosecuted. After the trial of the action Mrs. Comstock, who had filed the complaint, died and the principal defendant, James E. Brown, also died. The administrators of their respective estates have been substituted as parties.

The complaint contains two causes of action. In her first cause of action Mrs. Comstock alleged that she was a woman "over 80" years of age and suffering from "the usual infirmities of mind and body attended by reaching said age"; that on December 2, 1931, the defendants James E. Brown and his wife, Margaret Brown, had "represented and stated to the plaintiff that it was necessary to sign some 'papers' in order to accomplish the payment to her of a monthly income for the balance of her natural life and for the purpose of paying taxes on said property and that it was necessary for the plaintiff to sign a trust deed with respect to said property so as to accomplish said ends and that the defendants would pay the interest on said encumbrance and pay said encumbrance when the same became due and that her property would not be jeopardized thereby; . . .;" that the plaintiff believed and relied upon these representations and signed a trust deed upon 40 acres of ranch land to secure payment of a note in the principal sum of $5,000 with interest at the rate of twelve per cent per annum; that the representations were false and untrue and made for the purpose of defrauding the plaintiff who received no consideration for signing the trust deed. It is further alleged in the first cause of action that "thereafter at various times the defendants presented to the plaintiff various papers and documents the content and purport of which is unknown to the plaintiff, but plaintiff has since ascertained that among such papers and documents there was a note and trust deed in the

principal sum of $550.00, with interest thereon at the rate of twelve per cent (12%) per annum, in favor of the defendants, but that plaintiff received no consideration therefor and signed such papers and documents only upon the representations of the defendants that she would not in way be jeopardizing her property by the signing thereof and that all the said defendants were accomplishing was to relieve her of the obligation of the payment of taxes and insuring her that she would not be in want during her old age. . . ."

It is further alleged in the first cause of action that in the month of November, 1934, defendants "had the plaintiff sign a deed" to the property upon the representation that it was "the only method by which she could save her property from foreclosure and from becoming impoverished"; that no consideration was received for the deed and that the representations of defendants were false and untrue and were made with the intent of defrauding the plaintiff of her property.

In the second cause of action plaintiff sets forth the usual allegations in an action to quiet title.

In their briefs counsel for plaintiff present the picture of an enfeebled and impoverished old lady who by the conveyance to defendants was deprived of property of the value of $14,000 to $16,000 by an artful creditor to whom there was due at the time of the transaction only the sum of $5,938.43. On the other hand, counsel for defendants insist that the transaction was fair and honest in all respects, conducted by the parties at arm's length, both of whom were fully capable of undertanding and did understand the full meaning of the papers signed; that the conveyance was given for an adequate consideration and that no undue influence was used. The allegations of the pleadings presented issues of fact for the determination of the trial court, which made findings covering the allegations in favor of defendants. These findings are supported by the evidence and are binding upon the reviewing court.

In November of 1931 Mrs. Comstock desired to borrow $5,000 on her 40 acres. Before the money was borrowed from Mr. Brown she sought a loan elsewhere but without success. The witness B. F. Meagher testified: "I called up several mortgage companies and the mortgage companies wouldn't make any loans, wouldn't make any loans on any country property, and I finally thought of Mr. Brown, and called him and asked him if he would make a loan on 40 acres of ground in Downey . . ."

Mrs. Comstock appointed two agents, a Mr. Lusink and a Mr.

Polman, and requested them to procure a loan on her property. They contacted Mr. Brown, who looked at the land and made the loan. Mr. Brown did not meet Mrs. Comstock until after the loan was made. Lusink and Polman absconded with Mrs. Comstock's money. At the time the loan was made, as is a matter of common knowledge, the country was in a financial depression. Times became worse rather than better and Mrs. Comstock became delinquent in the payment of taxes and interest on the trust deed. On August 31, 1934, Mrs. Comstock gave to Mr. Brown a second trust deed in the principal sum of $550 to secure the amount for which she was then delinquent, the rate of interest being at 7 per cent per annum from its due date. Mrs. Comstock was unable to make further interest payments and on November 23, 1934, she gave to Mr. Brown the conveyance of the property which plaintiff sought to have cancelled in her action.

Plaintiff introduced no evidence whatever in substantiation of her charge that representations had been made that she would receive a monthly income for the balance of her life. Mr. Brown testified that the conveyance of November, 1934, was made after Mrs. Comstock had been delinquent nearly two years; that she told him that she had tried to sell the property and had also tried to get a loan elsewhere for the purpose of paying off the Brown loan, all without success. He further testified that, Mrs. Comstock called him on the telephone and asked him to "come over." She then asked him, "Wouldn't I have this property?" He told Mrs. Comstock that he would release her two trust deeds and give her $25 in cash. She asked, "This will clean up everything?" and he replied, "Yes, if I buy it." They arranged to go to the title company the next day to consummate the transaction. Mr. Loughlin, attorney and "title man" for the title company, testified that when Mrs. Comstock and Mr. Brown came to the office of the title company he "took Mrs. Comstock aside from Mr. Brown, over to another department in which she and I were alone." They had a conversation in which Mr. Loughlin became "perfectly satisfied that she knew what she was doing." She told Mr. Loughlin that she had other property and that she did not want to risk losing it by reason of a deficiency judgment in case the trust deeds were foreclosed.

Plaintiff asserts that the evidence is insufficient to justify the court's finding that Mrs. Comstock was not suffering from any infirmities of mind or body and that Mr. Brown did not take advantage of plaintiff or exercise undue influence upon

her. The only direct testimony concerning Mrs. Comstock's mental condition was from the witness Hoxie, an old friend and acquaintance, who testified over objection that in his opinion she was easily influenced. Assuming, without deciding, that the statement of Mr. Hoxie was properly before the court, it was not binding upon the judge in deciding the issue of Mrs. Comstock's mental capacity. The judge doubtless gave such weight to the testimony as he deemed it entitled to. He saw and heard Mrs. Comstock testify and relate her various business experiences. He also heard the testimony of others concerning her business activities. The fact that Mrs. Comstock was over eighty years of age does not compel a finding that she was mentally feeble. The finding as to her mental capacity is not without evidentiary support.

We find no merit in plaintiff's attack upon the finding that no undue influence was exercised on Mrs. Comstock. Mr. Brown did not seek the loan but application was made to him for a loan at twelve per cent interest after a failure to secure a loan elsewhere. When payments of taxes and interest became delinquent it was Mrs. Comstock who first proposed to Mr. Brown that he take a conveyance of the property. If Mrs. Comstock was in financial distress it could not be charged to Mr. Brown. It is common knowledge that at that period a great many property owners were in financial distress.

Transfers of mortgaged properties by mortgagors to mortgagees for the purpose of avoiding foreclosure proceedings and deficiency judgments have not been uncommon occurrences, especially in periods of financial distress. Transfers in such circumstances have been held valid by the courts where the transactions were fair and honest, free from improper influence and based upon adequate consideration. (*Baldwin* v. *American Trading Co.*, 76 Cal.App. 80 [243 P. 710]; *Deming* v. *Smith*, 19 Cal.App.2d 683 [66 P.2d 454]; *Watson* v. *Edwards*, 105 Cal. 70 [38 P. 527]; *Phelan* v. *De Martin*, 85 Cal. 365 [24 P. 725]; 18 Cal.Jur. 68 et seq.) In passing upon the issue of undue influence the court was doubtless mindful of the rule that as mortgagor and mortgagee the parties were not in a fiduciary relationship but were dealing at arm's length (*De Martin* v. *Phelan*, 116 Cal. 538 [47 P. 356, 56 Am.St.Rep. 115]; *Wright* v. *Security First Nat. Bank*, 35 Cal.App.2d 264 [95 P.2d 194].)

Plaintiff also criticizes the finding of the court that the conveyance was given for an adequate consideration. Although a finding that the value of the property at the time of

the conveyance was no greater than the amount due from Mrs. Comstock would have been supported by the testimony of Mr. Brown, the court made a finding that at the date of the conveyance the land "had an actual value of approximately ten thousand dollars $10,000.00, but that during all of said times, due to the then existing unfavorable economic conditions, the market value and the loan value of said land were adversely affected to an extent impossible of accurate determination." The question whether an adequate consideration was received was for the determination of the trial court whose determination will not be disturbed on appeal where as in the instant case there is any evidence to sustain its findings. The court found that Mr. Brown agreed to assume and pay the delinquent taxes on the property and to pay Mrs. Comstock the sum of $25; and that Mrs. Comstock received the further consideration of avoiding foreclosure and was also relieved of distress and anxiety in connection with the property. The court doubtless took into consideration the fact that the trust deed did not carry a period of redemption such as is usual with mortgages and that Mrs. Comstock's rights would cease upon a sale under the trust deed; and that because of the difficult financial conditions then prevailing there was a greater probability of a deficiency judgment which could be enforced against other property of Mrs. Comstock than that she could have obtained from any other party a sum greater than the amount then due Mr. Brown.

At the time set for the oral argument plaintiff presented a belated motion in this court asking that evidence be taken by this court pursuant to section 956a of the Code of Civil Procedure to establish that on February 5, 1938, the sum of approximately $7,000 had been tendered to defendants to pay any sum due under the terms of the trust deed, and that defendants had refused the tender. In order to prevail plaintiff should have made the tender at or before the trial of the action. We need not pass upon the question whether the motion should now be given further consideration, for in view of our disposition of the points made on appeal as above set forth it is apparent that the motion should be denied.

The motion to take additional evidence is denied. The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied April 22, 1943, and the following opinion was thereupon rendered:

THE COURT.—Plaintiff has filed a petition for rehearing in which he asserts that the opinion heretofore filed sets forth as facts matters which are untrue. He asserts that the statement in the opinion that "an appeal was taken from the order of September 20, 1937, resulting in the affirmance of the order" is "grossly unfair" to plaintiff and his counsel. A careful examination of the record discloses that no untrue statement appears in the statement of facts in the opinion. Plaintiff, however, argues that it is to be implied from the opinion that the Supreme Court affirmed the order of September 20, 1937, on the ground that deception had been practiced on the trial court in inducing the acceptance of the findings. He points out that the Supreme Court in affirming the order based its decision upon the ground that the trial judge was justified in making the order of September 20, 1937, upon the ground that the signing of the findings and judgment in the first instance was a clerical error.

Notwithstanding the unwarranted criticism of the trial court and of this court contained in the petition for a rehearing, we prefer to relieve counsel for plaintiff of the fear that the opinion of the court will result in "degrading and besmirching" him.

It is ordered that the following words be inserted in the opinion of the court after the word "order" appearing at the end of the 17th line of page 2 of the opinion (in line 12, page 912, *supra*): "upon the ground that the findings and judgment had been inadvertently filed."

The petition for a rehearing is denied.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1943. Curtis, J., voted for a hearing.