**GUAM HAKUBOTAN, INC.,**
Plaintiff–Appellee,

v.

**FURUSAWA INVESTMENT CORPORATION, Julale Investment Corporation, and Yasuda Shoji KK, Defendants–Appellants.**

No. 90–15248.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1991.

Decided Oct. 17, 1991.

Fredric D. Cohen, Horvitz & Levy, Encino, Cal., for defendants-appellants.

Robert K. Wrede, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for plaintiff-appellee.

Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.

FLETCHER, Circuit Judge:

Defendants Furusawa Investment Corporation, Julale Investment Corporation, and Yasuda Shoji KK appeal from the decision of the Appellate Division of the United States District Court for the District of Guam affirming the judgment of the Superior Court of Guam in favor of plaintiff Guam Hakubotan, Inc. ("Hakubotan"). Hakubotan had procured a loan from Yasuda, secured by a mortgage on real property, and subsequently obtained a six-month loan extension. Pursuant to the loan extension agreement, Hakubotan executed a warranty deed in favor of Yasuda's designee, Furusawa Investment, which was authorized to record the deed if Hakubotan defaulted during the extension period. Hakubotan defaulted, and Furusawa Investment recorded the deed. Hakubotan then brought the present action, claiming that the deed was actually a disguised mortgage and should be voided under Guam Civ.Code § 2889, which prohibits "contracts in restraint of the right of redemption from a lien." The superior court entered judgment for Hakubotan, and the appellate division affirmed. We reverse.

## FACTS

The relevant facts, which are not in dispute, are as follows. In March 1985, Hakubotan agreed to purchase from Antonia Camacho two parcels of real property in Guam for $1,895,000. On April 1, 1985, in part to finance its down payment on the property, Hakubotan borrowed from Yasuda 170 million yen (then equivalent to $654,000) at an interest rate of 1.5% per month, with the principal due in one year. Hakubotan delivered to Yasuda a promissory note, twelve post-dated checks for the monthly interest payments, and a post-dated check for the principal. As security for the loan, Yasuda received a mortgage on five parcels of property owned by Hakubotan, including junior mortgages on the two parcels Hakubotan was buying from Camacho. On April 2, Hakubotan executed a promissory note in favor of Camacho for $1,495,000, secured by senior mortgages on the two parcels.

Hakubotan made all of its monthly interest payments to Yasuda, but in early March 1986, less than one month before the principal was due, it informed Yasuda that it would have difficulty repaying the principal and asked for a six-month extension. At first Yasuda declined, warning Hakubotan that it would initiate foreclosure proceedings in the event of default. However, Hakubotan eventually persuaded Yasuda

to grant the extension by proposing a new agreement under which Hakubotan would deed the mortgaged property to Yasuda's designee, Furusawa Investment, if Hakubotan failed to repay the loan at the end of the six months.[1] Hakubotan expressed its willingness to execute a warranty deed conveying the property to Furusawa Investment with the proviso that the deed not be recorded unless Hakubotan defaulted. The parties retained a Guam attorney to memorialize the agreement on behalf of both parties. Before signing the agreement on March 10, 1986, Hakubotan also consulted separate counsel.

The agreement extended the principal repayment date to September 30, 1986, and provided that in the event Hakubotan failed to make all interest and principal payments to Yasuda through that date:

> Furusawa is hereby authorized and empowered by Mortgagor to record the Warranty Deed conveying all right, title and interest of Mortgagor to Furusawa Investment Corporation completely, in which event, the obligation of Mortgagor to Mortgagee under the mortgage secured by promissory note requiring payment of One Hundred Seventy Million Yen and interest payable in currency of Japan is cancelled and all matter resolved and settled with ownership of all properties listed in Mortgage being in the complete ownership of the Mortgagee. Such transaction shall be interpreted to be a sale of all Mortgagor's interest in all the properties listed in the Mortgage to the Mortgagee for the sum due under the promissory note for principal and interest attached to the Mortgage and *there shall be no rights of redemption or any other right whatsoever remaining in the Mortgagor.*[2]

Agreement ¶ 2 (emphasis added). [ER tab D at 3] Thus, upon Hakubotan's default, ownership of the mortgaged properties would transfer to Furusawa Investment without the need for any foreclosure proceedings or public sale (as provided in the original mortgage agreement), and Hakubotan's debt would be extinguished. Yasuda agreed not to foreclose during the extension period or seek any deficiency judgment, and Hakubotan explicitly relinquished its right of redemption. Upon executing the agreement, Hakubotan delivered six new postdated checks for interest payments and a new check for the principal postdated September 30, 1986. During the six-month extension period, the original promissory note and mortgage remained in full force, and Hakubotan continued to develop the property.

On September 25, 1986, less than a week before the end of the six-month extension, Hakubotan again asked Yasuda for more time to repay the loan. For the next several days, the parties held discussions and drafted proposed written extension agreements, but they never agreed to an extension. On September 30, 1986, Yasuda deposited the postdated check for the principal. The check was returned for insufficient funds. On October 6, Furusawa Investment recorded the warranty deed.

Hakubotan then filed the present action in the Superior Court of Guam against Yasuda, Furusawa Investment, and Julale Investment Corporation, asking the court to void the deed and treat the transaction as an equitable mortgage upon which the defendants would have to foreclose. The superior court ruled in Hakubotan's favor, finding that the transfer of the warranty deed to Furusawa Investment was nothing more than a continuation of the mortgage, that the deed was void, and that Hakubotan retained its equitable right of redemp-

---

1. Koretsu Furusawa is the president and principal shareholder of both Yasuda and Furusawa Investment, as well as of the third defendant-appellant, Julale Investment Corporation. Furusawa, himself, is not a named defendant.

2. The agreement also permitted recordation of the deed if Hakubotan defaulted on its payments due to Camacho, since Camacho held the senior mortgage on two of the parcels of proper-

ty covered by the mortgage agreement. Although Hakubotan subsequently defaulted on those payments, Hakubotan, Camacho, and Yasuda reached an accommodation, and Furusawa Investment did not record the deed. The events surrounding Hakubotan's default on the Camacho note and subsequent cure are not relevant to the present appeal.

tion. The court further found that Hakubotan had tendered a valid offer to Yasuda to pay the principal amount due, including interest, on November 21, 1986, thereby tolling the accrual of interest. The defendants appealed to the appellate division, which affirmed. The defendants then filed a timely notice of appeal to this court. We have jurisdiction pursuant to 48 U.S.C. § 1424–3(c).

## DISCUSSION

■ We review the appellate division's application of Guam law *de novo*. *Guam v. Yang*, 850 F.2d 507, 511 (9th Cir.1988) (en banc). In interpreting the provisions of the Guam Civil Code, which governs the present case, we refer to the law of California, from whose civil code the Guam Civil Code was adapted in 1933. *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1456 n. 5 & 1459 (9th Cir.1988). California decisions before 1933 are binding, while later decisions are persuasive. *Id.* at 1459.

Under the Civil Code of Guam,

All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void.

Guam Civ.Code § 2889 (1970). This provision states the familiar principle of equity and public policy that a mortgagor is not permitted to alienate his right of redemption at the time he enters into a mortgage agreement. *See, e.g., Beeler v. American Trust Co.*, 147 P.2d 583, 595, 24 Cal.2d 1 (1944) (interpreting identical Cal.Civ.Code § 2889); *Bradbury v. Davenport (I)*, 46 P. 1062, 1063, 114 Cal. 593 (1896) (same).

■ This statutory protection for mortgagors does not, however, render the right of redemption totally inalienable. While a mortgagor cannot alienate the right in conjunction with an initial mortgage agreement, California law clearly permits a mortgagor to transfer his ownership of mortgaged property and his right of redemption in a transaction subsequent to and independent of the initial mortgage. For example, in *Bradbury v. Davenport (II)*, 52 P. 301, 302, 120 Cal. 152 (1898), the Supreme Court of California held that Civil Code Section 2889 does not prohibit a subsequent agreement under which the mortgagee purchases the mortgagor's right of redemption and thereby acquires absolute title. In the court's words:

A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee, where the transaction is fair, honest, and without fraud, and where no unconscionable advantage has been taken of his position by the mortgagee.

52 P. at 302 (quoting *Watson v. Edwards*, 38 P. 527, 529, 105 Cal. 70, 75 (1894)); *see also Beeler*, 147 P.2d at 595 (recognizing "unquestioned" right of mortgagee to purchase mortgagor's right of redemption); *Baldwin v. American Trading Co.*, 243 P. 710, 712, 76 Cal.App. 80 (Cal.Ct.App.1925) ("[A] mortgagor debtor, at any time after the execution of the mortgage, may, by a separate and distinct transaction, sell or release his equity of redemption to the mortgagee.").

■ While a mortgagor can sell the mortgaged property to the mortgagee pursuant to a subsequent agreement, California courts carefully scrutinize transactions to ensure that a purported sale is not simply a scheme to deprive a debtor in difficult financial straits of his right of redemption. *Beeler*, 147 P.2d at 595. "[A] deed absolute on its face" is presumptively "what it purports to be," *Wehle v. Price*, 260 P. 878, 879, 202 Cal. 394 (1927), but "may be shown by parol to be intended as a mortgage," *Beeler*, 147 P.2d at 594 (quoting *Vance v. Anderson*, 45 P. 816, 818, 113 Cal. 532, 538 (1896)). The party claiming that a deed is actually a mortgage bears the burden of proof, *Wehle*, 260 P. at 879, and the court, in determining whether a deed is a mortgage, must discern the parties' intent by examining "all the facts and circumstances of the transaction, the conduct of the parties thereto, and their declarations against their own interests, their relations to one another and to the subject matter." *Beeler*, 147 P.2d at 594 (quoting *Vance*, 45 P. at 818). "The test of a mortgage is whether the relation of debtor and

creditor continues so that there is a subsisting debt *after* the conveyance." *Beeler*, 147 P.2d at 594 (quoting *Chapman v. Hicks*, 182 P. 336, 338, 41 Cal.App. 158, 162 (1919)) (emphasis added).

■ Hakubotan does not contend that the transaction was unfair, dishonest, or fraudulent, nor does it contend that Yasuda was guilty of overreaching. To the contrary, both parties are sophisticated real estate companies, and Hakubotan consulted with its own counsel before entering the agreement. Instead, Hakubotan argues— and it persuaded the lower courts—that the parties intended the agreement as a continuation of the mortgage and not a conditional sale. Hakubotan argues further that since the question of whether the agreement and deed represented a mortgage or a sale is a question of fact, we are to review the superior court's determination only for substantial evidence or clear error. *See Beeler*, 147 P.2d at 587 (appellate court will not disturb trial court's finding that deed is mortgage "where there is substantial evidence warranting a clear and satisfactory conviction to that effect"); *see also Natural Resources, Inc. v. Wineberg*, 349 F.2d 685, 688 (9th Cir.1965) (whether deed is mortgage is factual question reviewed for clear error) (applying California law), *cert. denied*, 382 U.S. 1010, 86 S.Ct. 617, 15 L.Ed.2d 525 (1966).

■ We find that the evidence does not support the lower courts' view that the agreement and warranty deed constituted a mortgage. As an initial matter, Hakubotan's characterization of the transaction is inconsistent with the logic and reality of the parties' relationship. The debt already was secured by a mortgage on the property. A deed may be deemed a mortgage if "made for the purpose of securing the payment of a debt," *Beeler*, 147 P.2d at 594, but the deed here did not represent additional security; it merely made it quicker and easier for Yasuda to obtain the property by circumventing the time-consuming process of foreclosure. Under the theory of the transaction proffered by Hakubotan and adopted by the lower courts—*i.e.*, that the deed was simply a continuation of the

mortgage—Yasuda received no consideration for the six-month loan extension it gave to Hakubotan. The more logical and economically sensible interpretation of the transaction is that Yasuda granted Hakubotan a loan extension in exchange for a swifter and less complicated means of recouping its losses if Hakubotan were to default, as it did. To interpret the transaction as a simple continuation of the mortgage would be to eliminate incentives for creditors to grant loan extensions sought by debtors and instead create an incentive for creditors simply to initiate foreclosure.

■ More importantly, Hakubotan and the lower courts have misapplied the test for whether a deed is a mortgage by focusing on the parties' relationship and activities during the loan extension period, rather than after the conveyance was effected. The essential factor the court must consider in scrutinizing a deed is whether the debt or debtor-creditor relationship effectively continues after the conveyance. *Beeler*, 147 P.2d at 594; *Holmes v. Warren*, 78 P. 954, 956, 145 Cal. 457 (1904) ("[T]he test in all this class of cases is, was there a subsisting debt after the conveyance?"); *Montgomery v. Spect*, 55 Cal. 352, 354 (1880) ("The only inquiry ... is, whether the relation of debtor and creditor remains, and a debt still subsists between the parties."). In the present case, the conveyance did not occur until the deed was recorded; at that point, ownership of the property transferred to Furusawa Investment and Hakubotan's debt was cancelled. The debtor-creditor relationship ended with the conveyance. The lower courts misdirected their attention to the relationship between the parties during the extension period (and thus before the conveyance). Naturally, during that period, the debtor-creditor relationship continued; Hakubotan, as owner, retained possession of the property and continued to develop it; Yasuda held the promissory note secured by the mortgage; and Furusawa held the deed for the parties in lieu of foreclosure (recordable upon default). However, the recordation of the deed—authorized by the agreement and triggered by Hakubotan's

default—erased the debt and transferred the property to Furusawa Investment with finality. After the conveyance, therefore, there was no subsisting debt or debtor-creditor relationship.[3]

In *Beeler,* the case upon which Hakubotan places primary reliance, a debtor-creditor relationship effectively continued after the conveyance. The debtor and his bank negotiated a time extension for repayment of the debt, which was secured by a mortgage on the debtor's ranch. Under the arrangement, the debtor deeded the ranch property to the bank, and the bank executed a one-year lease of the ranch to the debtor. The debtor remained responsible for taxes and maintenance and held an option to repurchase the land at any time during the term of the lease. *Beeler,* 147 P.2d at 586. Examining the nature of the transaction, and not merely its form, the court concluded that the deed was a disguised mortgage. In *Beeler*—which involved a sale, a lease-back, and an option to repurchase the property at a price slightly higher than the original price—a debtor-creditor relationship effectively continued after the conveyance. Indeed, the parties specifically designed the arrangement as a way for the bank to clear its books of a mortgage and replace it with an arrangement similar in substance but different in form. *Id.,* 147 P.2d at 596. Upon that evidence, it was perfectly reasonable for the court to conclude that the deed should be deemed a mortgage. *See also Todd v. Todd,* 128 P. 413, 164 Cal. 255 (1912) (deed deemed mortgage where sale was accompanied by option to repurchase for original price plus interest); *Montgomery v. Spect,* 55 Cal. 352 (1880) (same); *Sears v. Dixon,* 33 Cal. 326 (1867) (deed deemed mortgage where sale was accompanied by lease-back at rent equivalent to interest as well as option to repurchase at sale price plus rent). The present case differs in the crucial respect that once the property was conveyed to Furusawa Investment, the debt and the debtor-creditor relationship were extinguished.

The one factor that makes the present transaction resemble a mortgage is that the parties agreed to condition the sale on Hakubotan's future default. However, it is perfectly legal under California law for the parties to execute a conditional sale agreement like the one at issue here. In *Bradbury v. Davenport (II),* 52 P. 301, 120 Cal. 152 (1898), the mortgagor obtained a loan extension from the mortgagee in exchange for executing a deed conveying to the mortgagee a portion of the mortgaged property. The deed was placed in escrow, to be released to the mortgagee only upon a default, at which point the debt would be extinguished. When the mortgagor defaulted and the deed was released, the mortgagor sought to have the deed declared void under section 2889 of the California civil code. The court refused to treat the deed as a mortgage, instead recognizing it as a valid subsequent and conditional contract between mortgagor and mortgagee to transfer title.[4] 52 P. at 302; *see also McDonald v. Huff,* 19 P. 499, 77 Cal. 279 (1888); *Deming v. Smith,* 66

---

**3.** The superior court made much of the fact that the property was worth more than the consideration paid by Yasuda. Although "inequality between the worth of the property and the consideration ... is a 'strong circumstance' tending to show that the deed was intended to operate as a mortgage," *Beeler,* 147 P.2d at 592, it is not dispositive. Hakubotan was a fully competent, sophisticated real estate concern, and it retained the power to sell the property during the loan extension period. Hakubotan may have made some misjudgments about its ability to repay the loan or about the value of the mortgaged property, but at the time the parties executed the agreement—which was aggressively sought by Hakubotan—the arrangement was not unfair or inequitable. *See Deming v. Smith,* 66 P.2d 454, 457–58, 19 Cal.App.2d 683 (Cal.Ct.App.

1937) (declining to treat deed as mortgage despite significant disparity between worth of property and consideration paid).

**4.** The lower courts in the present case, in determining that the deed was a mortgage, may have been influenced by a Kansas case, *Holden Land & Live Stock Co. v. Interstate Trading Co.,* 123 P. 733, 87 Kan. 221 (1912), which criticized conditional sale agreements of the sort at issue here. Any reliance on *Holden* was misplaced. In the passage of its opinion containing that criticism, the Kansas court specifically identified California as a state in which conditional sale agreements are permitted. *See* 123 P. at 736 (citing *Bradbury* ).

404

P.2d 454, 19 Cal.App.2d 683 (Cal.Ct.App. 1937); *Baldwin v. American Trading Co.*, 243 P. 710, 76 Cal.App. 80 (Cal.Ct.App. 1925). The transaction in the present case is substantially the same as that at issue in *Bradbury.*

 We hold that the Guam courts erred in viewing the warranty deed and accompanying loan extension agreement as a mortgage rather than a conditional sale.[5] Hakubotan's final attempt to distinguish *Bradbury* and the similar cases cited above, on the ground that a debtor must actually default before a conditional sale agreement can be executed, is not persuasive. Hakubotan relies on *Hamud v. Hawthorne*, 338 P.2d 387, 390, 52 Cal.2d 78 (1959), which stated that a mortgagor can, "subsequent to default," transfer ownership to the mortgagee and waive the right of redemption in a contract separate from and subsequent to the initial loan agreement. This statement does not establish a default requirement. First, the statement is dicta; the court invalidated the transfer at issue not because it was part of a subsequent agreement executed prior to default, but because the mortgagor had waived the right of redemption at the time of the initial loan. Second, there is at least one California case, not addressed in *Hamud*, in which the court found that a mortgagor had validly released the right of redemption after obtaining a loan but before defaulting. *See Graves v. Arizona Central Bank*, 272 P. 1063, 1064, 205 Cal. 715, 717 (1928). Finally, as a matter of policy, it makes little sense to require a default by the debtor before permitting the debtor to release its right of redemption on mortgaged property. The rule that a mortgagor may release that right in a subsequent transaction, "at *any* time after the execution of the mortgage," *Baldwin*, 243 P. at 712 (emphasis added), is a rule that benefits debtors, as it permits creditors to accommodate their difficulties in repayment prior to default and the initiation of foreclosure proceedings. Hakubotan sought,

5. Our holding makes it unnecessary for us to consider appellants' argument that the lower courts erred in determining that Hakubotan

and Yasuda made, just such an accommodation.

The decision of the appellate division is REVERSED and REMANDED for entry of judgment in favor of appellants.

made a sufficient tender of all principal and interest it owed to Yasuda on November 21, 1986.